A98A1540. PATTERMAN et al. v. TRAVELERS, INC. et al.
(510 SE2d 307)

RUFFIN, Judge.

Scott and Donna Patterman filed a class action lawsuit against Travelers, Inc., Primerica Financial Services, Inc. (PFS), Primerica Life Insurance Company (PLI) and National Benefit Life Insurance Company, asserting various claims of fraud, negligence, racketeering, and unfair business practices. The Pattermans filed the suit in Richmond County, relying on OCGA § 33-4-1 (2), which provides that suits involving a claim or demand on any insurer may be brought in any county where the insurer has an agent. The defendants subsequently moved to transfer the action to Gwinnett County, where two of them maintain registered offices, arguing that OCGA § 33-4-1 is inapplicable to this tort action. The Pattermans contend venue is proper under OCGA § 33-4-1 because the action arose out of the defendants' "role as an insurer." The trial court granted defendants' motion and transferred the case to Gwinnett County. We granted the Pattermans' application for interlocutory review and reverse the lower court's order.

The complaint alleges that defendants engaged in a scheme to use false and misleading sales practices to induce individuals who already owned cash value insurance policies issued by other insurers to surrender such policies and replace them with term policies issued by one of the defendants and to invest the savings from reduced premiums in mutual funds issued by defendants. Plaintiffs allege that defendants' actions constituted an improper process of life insurance policy replacement known as "churning" or "twisting." With respect to the named plaintiffs, the complaint alleges that, in 1993, the Pattermans switched their life insurance from a whole life policy issued

by another insurer to a less expensive term life policy sold by PLI. The Pattermans invested the money they saved from reduced premiums in mutual funds issued by PFS. They allege that they took these actions based upon false or misleading representations by PLI's sales agent. The Pattermans claim that they later learned they were losing money because the mutual funds were not performing as promised. Thereafter, the Pattermans canceled their insurance policy and closed their mutual fund accounts.

The Pattermans contend that the agent's actions were part of a pyramid or multi-level marketing scheme in which defendants recruited agents to seek out holders of cash value life insurance policies and induce them, through deceptive sales techniques, to purchase defendants' policies and mutual funds. Based on these allegedly false and misleading sales practices, plaintiffs filed this class action lawsuit, asserting several counts of fraud, fraudulent inducement, negligence, racketeering, and unfair business practices. Defendants moved to transfer this case to Gwinnett County, arguing that OCGA § 33-4-1 is inapplicable. The trial court granted the transfer motion on February 6, 1998.

OCGA § 33-4-1 provides that "whenever any person shall have a claim or demand on any insurer, such person may bring an action in any of the following places: (1) In the county where the principal office of the company is located; (2) In any county where the company shall have an agent or place of doing business; (3) In any county where such agent or place of doing business was located at the time the cause of action accrued or the contract was made out of which such cause of action arose; or (4) In any county where the property covered by an insurance contract upon which an action is brought is located or where the person entitled to the proceeds of an insurance contract upon which action is brought maintains his legal residence." The Pattermans contend that venue is proper under subsection (2), arguing that the statute applies to all actions arising from an insurance company's business as an insurer, including tortious conduct by its agents during the solicitation of new business. Defendants argue that OCGA § 33-4-1 applies only to claims under the insurance contract itself. In determining whether OCGA § 33-4-1 applies to this case, we must ascertain the legislative intent and purpose in enacting the law and then give it that construction which will effectuate the legislative intent and purpose. *City of Calhoun v. North Ga. Elec. Membership Corp.*, 233 Ga. 759, 761 (1) (213 SE2d 596) (1975). See OCGA § 1-3-1. "In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter." OCGA § 1-3-1 (b).

We note that nothing in the language of subsection (2) indicates that it is intended to apply only to claims under insurance contracts. The statute indicates that it applies to "any claim or demand on any insurer." OCGA § 33-4-1. Black's Law Dictionary defines "claim" as "cause of action" or "demand for money or property," and defines "demand" as "the assertion of a legal right." Black's Law Dictionary, pp. 224, 386 (5th ed. 1979). Based on the "ordinary signification" of these words, the statute is not on its face limited to claims under insurance contracts.

To the extent that there is any limitation to the application of the statute, such limitation is not based on the words "claim or demand," but on the word "insurer." See *Liberty Mut. Ins. Co. v. Lott*, 246 Ga. 423 (271 SE2d 833) (1980). In *Lott*, the Supreme Court construed subsection (2) of the statute, which is the provision at issue here. In that case, the administrator of Lott's estate sued Liberty Mutual to enforce a settlement agreement involving a wrongful death claim against Liberty Mutual's insured. In seeking dismissal for improper venue, Liberty Mutual argued that subsection (2) did not apply because the action did not involve a claim between Liberty Mutual and its own insured. Liberty Mutual relied on *Mavity v. First of Ga. Ins. Co.*, 115 Ga. App. 763 (156 SE2d 191) (1967), in which we held that subsection (3) did not apply to a tort case for libel against an employee of the insurance company. However, the Supreme Court held that *Mavity* was distinguishable because it "did not arise out of the insurance company's business as an insurer, but its role as an employer. Therefore, the insurance venue provisions were not applicable. The present suit, however, arises out of Liberty Mutual's role as an insurer. Therefore, we hold that the venue provisions of the Insurance Code are applicable and affirm the Court of Appeals." (Citations omitted.) *Lott*, supra at 423.

Under *Lott*, therefore, venue is proper under OCGA § 33-4-1 (2) if a claim arises out of the defendant's "role as an insurer" or "business as an insurer." Defendants contend that an insurance company acts as an insurer only where there is an existing contractual relationship between the parties. However, the Insurance Code makes it clear that many actions prior to the execution of an insurance contract also constitute the business of insurance. OCGA § 33-1-2 (6) provides that the term " '[t]ransact,' with respect to insurance, includes any of the following: (A) *Solicitation and inducement*; (B) *Preliminary negotiations*; (C) Effectuation of a contract of insurance; or (D) Transaction of matters subsequent to effectuation of the contract and arising out of it." (Emphasis supplied.) OCGA § 33-6-4 (b) lists numerous examples of "unfair and deceptive acts or practices *in the business of insurance*" that do not relate to existing policyholders, including "making any misrepresentation to any policyholder

insured in any company for the purpose of inducing or tending to induce the policyholder to lapse, forfeit, or surrender his insurance," OCGA § 33-6-4 (b) (2), which is one of the allegations made in this case. (Emphasis supplied.)

The Insurance Code thus makes it clear that matters prior to the execution of an insurance contract, such as solicitation of business and preliminary negotiations, can constitute the business of insurance. Therefore, claims arising out of such matters are claims arising out of the defendant's business as an insurer. This result is consistent with federal law holding that the sale of insurance constitutes the "business of insurance." See *Securities & Exchange Comm. v. Nat. Securities*, 393 U. S. 453, 459-460 (89 SC 564, 21 LE2d 668) (1969) ("[O]nly when [insurance companies] are engaged in the 'business of insurance' does the [McCarron-Ferguson Act] apply. . . . The selling and advertising of policies . . . are also within the scope of the statute.").

In this case, plaintiffs' allegations involve claims that the defendants or their agents committed fraud and unfair or deceptive acts by inducing policyholders to surrender their existing policies and purchase policies issued by defendants. These claims constitute claims arising out of the business of insurance. Accordingly, the trial court erred in holding that OCGA § 33-4-1 (2) is inapplicable.

Neither *Mavity* nor *Dependable Ins. Co. v. Gibbs*, 218 Ga. 305, 313 (3) (127 SE2d 454) (1962), relied on by the defendants, requires a different result. In *Gibbs*, the Supreme Court discussed the constitutionality of subsection (4), stating that "[t]he object of the legislation is to fix the venue of actions against insurers on their contracts of insurance." However, *Gibbs* dealt only with subsection (4) of the statute, which on its face applies only to claims under insurance contracts. Thus, *Gibbs* does not stand for the broad proposition that the entire statute applies only to claims under insurance contracts. Moreover, *Gibbs* did not involve an analysis of whether the statute applied only to claims under insurance contracts, but dealt with the constitutionality of subsection (4). Id. at 312-313 (3).

In *Mavity*, we stated that "[t]he provisions of [subsection (3) of OCGA § 33-4-1] . . . do not apply to tort actions." *Mavity*, supra at 763 (2). However, *Mavity* dealt only with subsection (3) of the statute, and our decision was based upon language in that particular subsection dealing with claims under insurance contracts. *Mavity* noted that subsection (3) authorizes venue "in any county where the company's 'agent or place of doing business was located at the time the cause of action accrued or the contract was made out of which *such* cause of action arose.'" (Emphasis in original.) Id. The emphasis on the word "such" in the opinion makes it clear that the holding in *Mavity* was based on the particular language of subsection (3). In

effect, *Mavity* held that the use of the phrase "such cause of action" after the reference to a "contract" reflected a legislative intent that subsection (3) apply only to causes of action under such a contract. *Mavity* did not purport to discuss the effect of any of the other subsections.

Contrary to defendants' contentions, therefore, *Gibbs* and *Mavity* do not stand for the proposition that OCGA § 33-4-1, as a whole, applies only to claims brought under insurance contracts. Although subsections (3) and (4) on their face relate only to contract claims, subsection (2) contains no such limitation, providing that any claim or demand on an insurer may be brought "[i]n any county where the company shall have an agent or place of doing business." OCGA § 33-4-1 (2).

Because this case involves claims arising out of the business of insurance, the venue provisions of OCGA § 33-4-1 (2) are applicable. See *Lott*, supra. Although the defendants contend that the venue statute is unavailable to plaintiffs as out-of-state parties, nothing in the statute indicates that it is intended to be so limited. Therefore, the trial court's order is reversed, and this case is remanded for further action consistent with this opinion.[1]

*Judgment reversed. Pope, P. J., and Beasley, J., concur.*

DECIDED DECEMBER 3, 1998 —
RECONSIDERATION DENIED DECEMBER 16, 1998

*Bell & James, John C. Bell, Jr., Pamela S. James, James L. Bentley III, Hull, Towill, Norman & Barrett, David E. Hudson*, for appellants.

*Dye, Tucker, Everitt, Wheale & Long, Thomas W. Tucker, Rogers & Hardin, Peter W. Schneider, John J. Almond*, for appellees.

---

[1] Defendants note that PLI and National Benefit Life Insurance Company are the only defendants who are insurance companies. However, the transfer motion did not contend that venue might be proper in Richmond County with respect to these defendants but improper with respect to the non-insurer defendants, PFS and Travelers. Accordingly, we do not consider that issue here. We also do not address the issue of whether Georgia courts have personal jurisdiction over any of the defendants, as that issue was not raised or ruled on below.