**ILLINOIS UNION INSURANCE COMPANY, Plaintiff,**

v.

**SIERRA CONTRACTING CORP., et al., Defendants.**

Civil Action No. 1:09–cv–01022–JOF.

United States District Court, N.D. Georgia, Atlanta Division.

Oct. 12, 2010.

Jennifer Ann Kennedy–Coggins, Kenan G. Loomis, Cozen & O'Connor, Atlanta, GA, for Plaintiff.

Charles Hale Van Horn, Steven A. Wagner, Berman Fink Van Horn, Marc Howard Bardack, Bovis Kyle & Burch, LLC, Atlanta, GA, for Defendants.

### *OPINION & ORDER*

J. OWEN FORRESTER, Senior District Judge.

This matter is before the court on Defendants' motion for partial summary judgment [53]; Plaintiff's motion for summary judgment [56]; Plaintiff's motion for leave

to file supplemental brief [84]; and Defendants' motion for leave to file sur-reply [85].

## I. Background

### A. Facts

In September 2002, Sierra Contracting Corp. and Milltown Lofts Associates, LLC entered into a contract for the construction of Milltown Lofts, a residential condominium project located in Atlanta, Georgia. Sierra subcontracted construction of the roofing areas to Ray–O–Lite. Sierra was insured by Illinois Union under two Commercial General Liability (CGL) Policies for policy periods from January 1, 2003 through January 1, 2005. Both policies contain a "Duties in the Event of Occurrence, Offense Claim or Suit" provision ("the Notice provision") which requires Sierra to notify Illinois Union "as soon as practicable of an 'occurrence' or an offense which may result in a claim."

Construction on the Milltown Loft project continued through 2003. Water intrusion problems began almost immediately and leaks were reported as early as May and June 2003. On May 23, 2003, Sierra's superintendent contacted Ray–O–Lite's project manager regarding "leaks in numerous buildings at Milltown Lofts." Units at Milltown Lofts sustained sheet rock damage in May 2003 as a result of the water incursions.

On May 23, 2003, Ray–O–Lite, Sierra, and Milltown sent representatives to survey the damage to Milltown Lofts. In May 2003, "Serv Pro" made an "Emergency Water Loss Mitigation Service Call" to Milltown Lofts. Leaks continued in June 2003. On June 13, 2003 and June 27, 2003, Sierra approved back charge requests for repairs due to leaks caused by improperly secured roof membranes and flashing.

Milltown received specific complaints about leaks in 2003 associated with the "dog houses," windows, balconies, doors, gradings and scuppers which were made known to Sierra through emails and calls in which Milltown told Sierra to "fix it." The leaking continued through the construction of the Milltown Lofts which were completed in December 2003.

On May 20, 2004, Milltown emailed representatives of Sierra complaining of unrepaired patches to roofing, improper installation of flashing, as well as other problems with the roofing structure. In July 2004, Ray–O–Lite wrote Sierra about the results of a roofing inspection which recommended the replacement of six roofing systems, as well as repair of several other problems. On September 17, 2004, Sierra sent Ray–O–Lite a proposed letter agreement under which Ray–O–Lite was to make "necessary repairs to the roofs at Milltown Lofts." On September 27, 2004, Milltown Lofts Homeowner's Association President sent an email to representatives of Sierra suggesting that the damage caused by water intrusion might be covered by Sierra's insurance. On October 12 and 29, 2004, and November 15, 2004, Sierra received letters from Milltown residents' lawyers concerning water intrusion issues.

Defendants aver that Notice was provided to HBW Insurance Services on or about September 22, 2005 at the address provided for in the policies. Plaintiff claims that Illinois Union did not receive notice until November 10, 2005.

As a result of these problems, on May 5, 2006, Milltown sued Sierra and subcontractor Deft Holdings, Inc., d/b/a Ray–O–Lite, for improper construction in a case styled as *Milltown Lofts Associates, LLC v. Sierra Contracting Corp., Simon S. Sater, Larry D. Wolfe and Deft Holdings, Inc., d/b/a/ Ray–O–Lite,* Superior Court Fulton County, State of Georgia, Civil Action File No.2006–CV–116179. Plaintiff defended Sierra in the Underlying Litigation under

a reservation of rights. The case went to trial in December 2008 with the jury ultimately awarding Milltown a verdict against Ray–O–Lite of $604,671.48 and against Sierra of $441,486.24.

### B. Contentions

On April 16, 2009, Plaintiff filed the instant declaratory judgment action seeking a declaration that claims raised in the Underlying Lawsuit are not covered by the policies issued by Illinois Union because Sierra did not provide proper notice, the property damage at issue did not arise out of an "occurrence," and repair of Sierra's work is barred by the "business risk," "known loss," mold, and recall exclusions.

Defendants respond that they provided timely notice of the claims once an endorsement in January 2005 clarified that the Milltown project was covered by Illinois Union's policies; there was an "occurrence" under the policies, the exclusions argued by Plaintiff were barred or inapplicable as a matter of law, and the damages were not based on a "known loss" and therefore not excluded under coverage. Defendants also argue that Plaintiff is liable to them for bad faith refusal to pay under O.C.G.A. § 33–4–6.

### II. Analysis

The court has discussed the issue of "notice" under Georgia insurance law on several occasions. *See, e.g., Auto–Owners Ins. Co. v. DFH Development, Inc.,* Civil Action No. 08–CV–1465–JOF, 2009 WL 2515638 (N.D.Ga. Aug. 12, 2009); *Trinity Universal Ins. Co. v. Georgia Casualty & Surety Co.,* Civil Action No. 08–CV–1332–JOF, 2009 WL 1174659 (N.D.Ga. Apr. 28, 2009); *Travelers Indemnity Co. of Conn. v. Douglasville Development, LLC,* Civil

Action No. 07–CV–410–JOF, 2008 WL 4372004 (N.D.Ga. Sept. 19, 2008).

■ Under Georgia law notice provisions which are made a condition precedent to coverage are valid, and where an insured has not demonstrated sufficient justification for failure to give notice in accordance with such notice provisions, then the insurer is not obligated to provide coverage or a defense. *Federated Mut. Ins. Co. v. Ownbey Enterprises, Inc.,* 278 Ga.App. 1, 2, 627 S.E.2d 917 (2006); *Plantation Pipeline Co. v. Royal Indem. Co.,* 245 Ga.App. 23, 28, 537 S.E.2d 165 (2000); *Richmond v. Georgia Farm Bureau Mut. Ins. Co.,* 140 Ga.App. 215, 221, 231 S.E.2d 245 (1976).

Generally, notice provisions are made a condition precedent to coverage so that insurers can be certain that they are given the opportunity to investigate the facts surrounding an incident promptly and to prepare a defense or settlement while the facts are still fresh and witnesses are still available. *Richmond,* 140 Ga.App. at 221, 231 S.E.2d 245; *Travelers,* Civil Action No. 1:07–CV–410–JOF, 2008 WL 4372004, at *17–18 (holding that "it is well established under Georgia common law that prejudice is irrelevant to an insurer's assertion of notice as a coverage defense because failure to give timely notice is a failure of a condition precedent to coverage which alone voids coverage"); *Southeastern Express Sys. v. S. Guar. Ins. Co.,* 224 Ga.App. 697, 701, 482 S.E.2d 433 (1997) (finding insurer did not have to show it was prejudiced by late notice because notice was a condition precedent).[1]

■ The meaning of "as soon as practicable," the sufficiency of an insured's excuse, and an insured's diligence in provid-

---

1. Defendants did not argue that the notice provision here was not a condition precedent to coverage.

ing notice after all impediments to notice are removed are generally questions of fact to be determined by a jury, according to the nature and circumstances of each individual case. *Gibson v. Dempsey,* 167 Ga.App. 23, 306 S.E.2d 32, 33 (1983). Georgia courts have found on a number of occasions, however, that the justification offered by an insured for failure to notify the insurer was unreasonable as a matter of law under the nature and circumstances of the case. *Travelers Indemnity Co. of Conn. v. Douglasville Development, LLC,* Civil Action No. 07–CV–410–JOF, 2008 WL 4372004 (N.D.Ga. Sept. 19, 2008) ("when the undisputed facts would preclude recovery, the issue of notice becomes a question of law appropriate for disposition on summary judgment"); *S. Guar. Ins. Co. v. Miller,* 183 Ga.App. 261, 262–63, 358 S.E.2d 611 (1987).

Courts applying Georgia law have held delays of four months to one year preclude recovery as a matter of law. *See Hathaway Development Co. v. Illinois Union Ins. Co.,* 274 Fed.Appx. 787 (11th Cir.2008) (per curiam) (delays of four, five, and eight months unreasonable as matter of law); *Canadyne–Georgia Corp. v. Continental Ins. Co.,* 999 F.2d 1547, 1556 (11th Cir. 1993); *American Ins. Co. v. Evercare Co.,* 699 F.Supp.2d 1361, 1368 (N.D.Ga.2010) (Batten, J.) (nine-month delay unreasonable as matter of law); *Cotton States Mut. Ins. Co. v. International Surplus Lines Ins. Co.,* 652 F.Supp. 851, 856 (N.D.Ga. 1986) (Hall, J.) ("The Georgia courts have repeatedly held that where no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law."); *Advocate Networks, LLC v. Hartford Fire Ins. Co.,* 296 Ga.App. 338, 674 S.E.2d 617 (2009) (insured's four-month delay in sending insurer complaint violated policy provision requiring notice "immediately"); *Kay–Lex Co. v. Essex Inc. Co.,* 286 Ga.App. 484, 649 S.E.2d 602 (2007)

(twelve-month delay unreasonable as matter of law); *Caldwell v. State Farm Fire & Cas. Ins. Co.,* 192 Ga.App. 419, 421, 385 S.E.2d 97 (1989); *EVI Equipment, Inc. v. Northern Ins. Co.,* 188 Ga.App. 818, 374 S.E.2d 788 (1988) (eleven-month delay); *Bituminous Casualty Corp. v. J.B. Forrest & Sons, Inc.,* 132 Ga.App. 714, 209 S.E.2d 6 (1974) (four-month delay).

■ Here, even accepting Defendants' arguments that they had no reason to provide notice to Plaintiff prior to January 2005 when an endorsement retroactively added the Milltown project to the insurance policies, and accepting Defendants' argument that notice was received on September 22, 2005 (neither of which Plaintiff concedes), that still leaves an almost nine-month delay between January 2005 and September 2005. Defendants do not offer any justification for this nine-month delay. Rather, Defendants simply argue this is a jury question and because Plaintiff did not send notice to Ray–O–Lite's insurance carrier that Plaintiff was seeking indemnification until two years after the lawsuit was filed, then the jury could consider whether Defendants' nine-month delay was reasonable.

As the court explained above, whether notice occurred "as soon as practicable" is not always a question of fact for the jury. The court does not find it to be such here where Defendants have not offered even one justification for the delay. The court finds this particularly striking where Defendants had known since 2003 that there were serious water problems at the Milltown project and had even discussed amongst themselves the possibility of litigation. Defendants' argument that Plaintiff did not seek indemnity from Ray–O–Lite's insurer until two years after the fact is wholly irrelevant. The insurance contract between Plaintiff and Defendants requires notice to be given "as soon as prac-

ticable." The court finds that nine months is not "as soon as practicable."

For these reasons, the court GRANTS Plaintiff's motion for summary judgment [56]. Because the court decides the issue based on Defendants' failure to provide prompt notice to Plaintiff, the court need not reach the issue of whether the claims raised in the Underlying Lawsuits are covered by the Illinois Union insurance policy. Further, since it had no obligation to pay, Plaintiff cannot be liable under O.C.G.A. § 33–4–6 bad faith refusal to pay. The court DENIES AS MOOT Defendants' motion for partial summary judgment [53].

## III. Conclusion

The court DENIES AS MOOT Defendants' motion for partial summary judgment [53]; GRANTS Plaintiff's motion for summary judgment [56]; GRANTS Plaintiff's motion for leave to file supplemental brief [84]; and GRANTS Defendants' motion for leave to file sur-reply [85].