**ILLINOIS UNION INSURANCE COMPANY, Plaintiff,**

v.

**NRI CONSTRUCTION INC., et al., Defendants.**

**Civil Action No. 1:10–cv–02448–JOF.**

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 28, 2012.

Kenan G. Loomis, Cozen & O'Connor, Atlanta, GA, for Plaintiff.

Lane R. Frostbaum, Lane R. Frostbaum, P.C., Atlanta, GA, for Defendants.

## ORDER

J. OWEN FORRESTER, Senior District Judge.

This matter is before the court on Plaintiff's Motion for Summary Judgment [32] and Plaintiff's Motion for Default Judgment as to Jose Alonzo [44].

## I. Background

### A. Procedural and Factual History [1]

Plaintiff, Illinois Union Insurance Company, filed this declaratory judgment action against Defendants, NRI Construction, Inc. and Jose Alonzo, on August 4, 2010, seeking a declaration that Illinois Union has no duty to defend, indemnify or

---

1. The following facts are undisputed.

otherwise pay the Defendants in connection with litigation between Defendants NRI Construction and Alonzo. On April 27, 2011, Plaintiff filed the present Motion for Summary Judgment.

This is an insurance coverage case arising out of a Commercial General Liability Policy issued by Illinois Union to NRI Construction for policy year May 6, 2007, through May 6, 2008. The policy included a notice provision which required NRI Construction to notify Illinois Union "as soon as practicable of an 'occurrence' or an offense which may result in a claim." Pl.'s Statement of Material Facts ("PSMF"), ¶ 2. The policy defined 'occurrence' as "an accident." *Id.*

In April of 2008, NRI Construction was acting as the general contractor on a construction project in Hattfield, Pennsylvania and had retained C & S Painting as a subcontractor to conduct exterior cladding and demolition work on an existing building. On April 29, 2008, Defendant Alonzo, who was either a subcontractor or employee of C & S Painting, purportedly sustained injuries when he fell from a ladder. Emails between one John McCormick and David Mann, who was NRI Construction's project manager for the Hattfield project, provide more details on Alonzo's fall. According to the emails, Alonzo fell "8 feet off a ladder. He was able to get up and under his own strength walk to NRI's Office (approx. 600 yards) and inform David Mann of what had happened. He complained that he has hurt his shoulder, but could still move it. The ambulance was called and he was taken to the hospital." Manoah Dep., Exh. 12. The emails also indicate that Alonzo injured "his side and rib area." *Id.* NRI Construction did not notify Illinois Union of the incident at the time, but did speak to its insurance agent. According to NRI, the agent responded, "Well, if he's got insurance and you're okay, don't worry about it . . . . the

guy wasn't working for you." Manoah Dep., at 60. Shortly thereafter, in May of 2008, NRI Construction, Inc., a Delaware corporation ("NRI of Delaware"), acquired all the assets of Defendant NRI Construction, Inc., a Georgia corporation ("NRI of Georgia").

In January of 2010, Alonzo filed suit against several defendants, including NRI of Georgia, in the Court of Common Pleas of Montgomery County, Pennsylvania ("the Underlying Action"), for injuries allegedly suffered as a result of his fall from the ladder. After being served with the complaint in the Underlying Act, NRI of Georgia provided Illinois Union with notice of Alonzo's accident in February 2010. On February 11, 2010, Thomas Weinberger, Chief Claims Specialist at Illinois Union, sent an email to Michael McCarthy, former CFO of NRI of Georgia and then-CFO of NRI of Delaware, asking McCarthy to answer various questions so that the Alonzo claim could be investigated. McCarthy acknowledged the email the same day and responded that he would "investigate and find out what's up." PSMF, ¶ 10. Weinberger's questions were then answered by one Todd Shirner on February 16, 2010.

After investigating the allegations of the Underlying Action, Illinois Union decided to defend NRI of Georgia under a reservation of rights. Illinois Union thus sent a reservation of rights letter via email and certified mail to Michael McCarthy and Todd Shirner. The reservation of rights letter stated that "[Illinois Union] reserves the right to withdraw from the defense, to seek recoupment of any expenses incurred in the defense, to seek a declaration of its rights and its obligations, if any, and to decline any obligation to indemnify or defend." Weinberger Decl., Exh. 4, at 5. That same day, McCarthy responded,

Thank you Tom. Moving forward, please make Pazit Lewit your primary contact.... Pazit is the representative of NRI Construction, Inc. of GA, which is who this claim is directed against. Todd and I actually work for NRI Construction, Inc. of DE, a company which acquired the assets of NRI Construction, Inc. of GA subsequent to the date of this accident.

Weinberger Decl., Exh. 4. McCarthy then forwarded the reservation of rights letter to Ron Manoah, an owner and officer of NRI of Georgia. Illinois Union subsequently defended NRI of Georgia in the underlying case.

## B. Contentions

Illinois Union argues that NRI of Georgia violated the notice provision in its insurance policy by waiting almost two years to report Alonzo's accident, and therefore Illinois Union has no duty to defend, indemnify or otherwise pay the Defendants in connection with the Underlying Action. Illinois Union seeks reimbursement for all costs and fees it incurred in defending the Underlying Action.

Defendant responds that it had a reasonable excuse for its delay in providing notice: it believed Alonzo was covered by workers' compensation insurance through his employer, C & S Painting. Defendant contends that a jury should determine whether, under these circumstances, Illinois Union was given proper notice. Defendant further argues that Illinois Union's reservation of rights letter was defective because it was sent to Michael McCarthy and Todd Shirner in 2010 when they were no longer employees of NRI of Georgia and instead worked for NRI of Delaware. Defendant finally contends that Illinois Union's request for the

costs and fees related to the Underlying Action should be denied because it is contrary to the policy terms and Georgia law.

## II. Discussion

### A. Notice Provision

■ This court has analyzed the issue of "notice" under Georgia insurance law on several occasions. *See, e.g., Illinois Union Ins. Co. v. Sierra Contracting Corp.,* 744 F.Supp.2d 1349, 1351 (N.D.Ga.2010) (Forrester, J.) (citing cases). Under Georgia law, a notice provision which is made a condition precedent to coverage is valid, and where an insured has failed to demonstrate sufficient justification for failure to provide notice in accordance with such notice provision, the insurer is not obligated to provide coverage or a defense. *Id.*

■ "Generally, notice provisions are made a condition precedent to coverage so that insurers can be certain that they are given the opportunity to investigate the facts surrounding an incident promptly and to prepare a defense or settlement while the facts are still fresh and witnesses are still available." *Id.*[2]

■ The meaning of "as soon as practicable," and the sufficiency of an insured's excuse are generally questions of fact to be determined by a jury, according to the nature and circumstances of the individual case. *Id.* at 1351–52. Nonetheless, Georgia courts have found on a number of occasions that an insured's justification for failure to notify the insurer was unreasonable as a matter of law under the nature and circumstances of the case. *Id.* at 1352; *Travelers Indemnity Co. of Conn. v. Douglasville Dev., LLC,* No. 07–CV–410–JOF, 2008 WL 4372004, at *4 (N.D.Ga.

---

**2.** Defendant does not argue that the notice provision at issue here was not a condition precedent to coverage.

Sept. 19, 2008) ("[W]hen the undisputed facts would preclude recovery, the issue of notice becomes a question of law appropriate for disposition on summary judgment."); *S. Guar. Ins. Co. v. Miller*, 183 Ga.App. 261, 262–63, 358 S.E.2d 611 (1987).

■ Courts applying Georgia law have held that delays of four months to one year preclude recovery as a matter of law. *See Hathaway Dev. Co. v. Illinois Union Ins. Co.*, 274 Fed.Appx. 787 (11th Cir.2008) (per curiam) (delays of four, five, and eight months unreasonable as a matter of law); *Illinois Union Ins. Co.*, at 1352; *American Ins. Co. v. Evercare Co.*, 699 F.Supp.2d 1361, 1368 (N.D.Ga.2010) (Batten, J.) (nine-month delay unreasonable as a matter of law); *Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins. Co.*, 652 F.Supp. 851, 856 (N.D.Ga.1986) (Hall, J.) ("The Georgia courts have repeatedly held that where no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law."); *Kay–Lex Co. v. Essex Ins.*, 286 Ga.App. 484, 649 S.E.2d 602 (2007) (twelve-month delay unreasonable as a matter of law).

Here, it is undisputed that NRI of Georgia waited nearly two years from the date of Alonzo's fall to notify Illinois Union of the accident. NRI of Georgia, however, claims that it did not report Alonzo's fall to Illinois Union because Alonzo was working for C & S Painting. NRI believed he was covered by the sub-contractor's workers' compensation insurance, which C & S was required to have. NRI of Georgia asserts that it "has never seen or heard of a subcontractor's employee bringing an action against the general contractor for damages like Alonzo." Pl.'s Resp., at 6. Furthermore, NRI of Georgia claims that it notified its insurance agent of the Alonzo incident at the time, and the agent responded, "Well, if he's got insurance and you're okay, don't worry about it . . . . the guy wasn't working for you." Manoah Dep., at 60. Thus, NRI of Georgia contends that the reasonableness of its excuse is a question for the jury under these circumstances.[3]

Illinois Union maintains that Defendant's offered justification is insufficient to excuse its delay. Under the policy, any "occurrence" (defined as an accident) or offense which *may* give rise to a claim must be reported; there is no exception for accidents sustained by non-NRI employees. Illinois Union reasons that under Georgia law, an insured cannot avoid the notice requirement by claiming that it did not believe it was liable. Illinois Union also points the court to a Second Circuit decision in which that court rejected a similar argument.

■ "The duty to provide notice to the insurer is triggered when the insured actually knew or should have known of the possibility that it might be held liable for the occurrence in question." *S.C. Ins. Co. v. Coody*, 957 F.Supp. 234, 237 (M.D.Ga. 1997). NRI of Georgia's subjective belief that Alonzo's fall could not subject it to liability does not avoid the requirement of prompt notice. *Id.* at 238. The fact that Defendant "has never seen or heard of a subcontractor's employee bringing an action against the general contractor for

---

**3.** During his deposition, NRI of Georgia's corporate designee testified that Alonzo "didn't get hurt seriously enough to where it was brought to our attention that there was a guy that got hurt on the job. The guy stood up and walked." *Manoah Dep.*, at 22. Emails indicate, however, that Alonzo fell eight feet from a ladder, hurt his side and rib area, and had to be taken away in an ambulance. NRI of Georgia cannot therefore persuasively argue that Alonzo's injuries were so trivial that it did not think it would have to report them to Illinois Union.

damages" is irrelevant to the court's inquiry. Pl.'s Resp., at 6. The principal question, rather, is whether NRI of Georgia's subjective belief was objectively reasonable. Framed this way, the court must determine whether it can find as a matter of law that NRI of Georgia *should have known* of the possibility that Alonzo may sue it for the injuries he sustained when he fell from a ladder at the Hattfield construction site.

■■ With a little research, the court has found numerous similar lawsuits in both Pennsylvania, where the accident occurred, and Georgia. *See, e.g., McCarthy v. Dan Lepore & Sons Co.,* 724 A.2d 938 (Pa.Super.1998) (injured employee of sub-subcontractor brought negligence action against sub-contractor); *Lascio v. Belcher Roofing Corp.,* 704 A.2d 642 (Pa.Super.1997) (employee of sub-subcontractor brought negligence action against general contractor for injuries sustained at work site); *Creeden v. Fuentes,* 296 Ga.App. 96, 673 S.E.2d 611 (2009) (employee or independent contractor of sub-subcontractor brought negligence action against general contractor for injuries sustained in fall on construction site); *Bossard v. Atlanta Neighborhood Dev. Partnership, Inc.,* 254 Ga.App. 799, 564 S.E.2d 31 (2002) (employee of sub-contractor brought personal injury action against general contractor). Thus, such suits are not so far beyond the pale that NRI of Georgia was entitled to assume that it could not be held liable for the injuries Alonzo suffered on its work site. The language of the insurance policy explicitly mandates that NRI of Georgia was to give Illinois Union notice of any accident or offense "which *may* result in a claim." PSMF, ¶ 2 (emphasis added). Given the presence of such lawsuits, and regardless of whether NRI of Georgia may actually be held liable in the Underlying Action, NRI had a duty to report the accident so that Illinois Union could promptly investigate the facts surrounding

the incident while they were still fresh and to prepare a defense of the action or determine the feasibility of settlement of the claim. *See Coody,* 957 F.Supp. at 238. NRI of Georgia also cannot rely on the representations of its own insurance agent to excuse its failure to comply with the notice provision. The agent was not in a position to give NRI of Georgia legal advice concerning the viability of a legal claim against it. "[A]n insured may not independently determine whether 'an offense which may result in a claim' is covered or will ultimately result in a claim." *Travelers Indemnity,* 2008 WL 4372004, at *5.

■ The court finds that the terms of the insurance policy govern here and clearly required NRI of Georgia to notify Illinois Union of any accident or offense "which may result in a claim." PSMF, ¶ 2. Alonzo's fall could have, and indeed did, lead to a claim against NRI of Georgia.

> A valid excuse for failure to provide notice does not include the insured's conclusion that it was free of fault and that there was no liability to the other party. That is the very issue which the company must have reasonable opportunity to investigate with promptness, and which requires a prompt notice of the occurrence.

*Travelers Indemnity,* 2008 WL 4372004, at *5 (internal quotations and citations omitted). Thus, NRI of Georgia's offered justification is unreasonable as a matter of law.

This conclusion is buttressed by *Eastern Baby Stores, Inc. v. Central Mutual Insurance Co.,* 337 Fed.Appx. 10 (2d Cir. 2009), a case involving a similar claim and identical policy language. There, an individual allegedly tripped and fell in the insured's store and subsequently brought suit. *Eastern Baby Stores, Inc. v. Central Mut. Ins. Co.,* No. 07–CIV–3890, 2008 WL

2276527, at *1 (S.D.N.Y. June 2, 2008). The insured delayed three years in notifying the insurance company of the accident but argued the delay was justified by its reasonable belief that workers' compensation would cover any liability. *Eastern Baby Stores,* 337 Fed.Appx. at 11. The court found that "[the insured's] belief that [the individual] was entitled to workers' compensation was not a reasonable basis for concluding that the accident was not 'an occurrence ... which *may* result in a claim.'" *Id.* Similarly, here, NRI of Georgia was not justified in failing to notify Illinois Union of Alonzo's accident solely because it believed he was covered by another company's worker's compensation insurance. *See also Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Group, Inc.,* 825 F.Supp.2d 384, 392 (E.D.N.Y.2011) ("Courts have consistently held that a belief in a third party's superseding liability is unreasonable as a matter of law, and thus cannot excuse failure to provide timely notice.").

## B. Reservation of Rights Letter

NRI of Georgia next contends that Illinois Union is precluded from raising coverage defenses because it assumed NRI of Georgia's defense under a defective reservation of rights. NRI of Georgia argues that because Illinois Union's reservation of rights letter was sent to Michael McCarthy and Todd Schirner, who were no longer employed by NRI of Georgia but rather by NRI of Delaware, there was no effective notice to NRI of Georgia. Illinois Union responds that by accepting Illinois Union's defense under the reservation of rights without objection, NRI of Georgia impliedly consented to Illinois Union's reservation of rights.

 Although Illinois Union sent its reservation of rights letter to McCarthy and Shirner, it is undisputed that the letter was then forwarded to NRI of Georgia.

PSMF, ¶ 17. The letter explicitly stated that NRI of Georgia may be in violation of the notice provisions of its insurance policy and reserved "the right to withdraw from the defense, to seek recoupment of any expenses incurred in the defense, to seek a declaration of its rights and its obligations, if any, and to decline any obligation to indemnify or defend." Weinberger Decl., Exh. 4, at 5. The letter was, therefore, "sufficient to inform [NRI of Georgia] of the basis for [Illinois Union's] reservations about coverage." *Jacore Systems, Inc. v. Central Mut. Ins. Co.,* 194 Ga.App. 512, 514, 390 S.E.2d 876 (1990). "By not objecting to the reservation of rights letter and by permitting [Illinois Union] to go forward with its defense of the suit, [NRI of Georgia] is deemed to have consented to the letter's terms." *Id.* (citing *State Farm, etc., Ins. Co. v. Anderson,* 104 Ga. App. 815, 818, 123 S.E.2d 191 (1961)). *See also State Farm Fire and Casualty Co. v. Walnut Avenue Partners,* 296 Ga.App. 648, 675 S.E.2d 534 (2009) ("Georgia law ... does not require an insured's signature on a reservation of rights form, but recognizes that an insurer can reserve its rights unilaterally or with the implied consent of the insured."). NRI of Georgia received the letter, had notice of its contents, and then permitted Illinois Union to mount its defense without objection. NRI of Georgia therefore impliedly consented to the reservation of rights letter and its terms and cannot avoid this result by belatedly arguing the letter was sent to the wrong entity.

## C. Recoupment of Expenses

Finally, Illinois Union seeks reimbursement of all costs and fees incurred in defending the Underlying Action. Illinois Union argues it is entitled to such costs and fees because to hold otherwise would unjustly enrich NRI of Georgia and provide it with a benefit it did not bargain for

under the initial insurance agreement. Further, Illinois Union contends that NRI of Georgia's implied consent to its reservation of rights letter means that NRI is bound by the terms of that letter, which included a right to recoup defense expenses.

NRI of Georgia responds that if Illinois Union wanted the right to recoup defense costs, it should have included a provision granting itself that right in the insurance agreement. NRI argues that granting Illinois Union's request would alter the terms of the parties' original contract, without additional consideration or mutual assent.

 Upon review of the parties' briefs and Georgia case law, it appears that this is a matter of first impression in Georgia. Thus, this court must endeavor to best predict how the Supreme Court of Georgia would decide the issue. The court looks to the decisions and rationales from other jurisdictions that have decided this specific issue and Georgia case law for guidance in making this determination. *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 917 (6th Cir.2002).

## 1. Decisions from Other Jurisdictions

Nationally, courts are split as to whether an insurer has a right to reimbursement of defense fees paid where it is determined that the insurer had no duty to defend. *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 714 (8th Cir.2009). The majority view affords insurers such as Illinois Union the right to seek reimbursement under certain circumstances. *See Westchester Fire Ins. Co.*, 563 F.3d at 714; *United Nat'l Ins. Co.*, 309 F.3d at 917–19. Courts recognizing the right have done so under at least two different theories.

In *United National Insurance Co.*, the Sixth Circuit, after reviewing case law on the issue, found that courts in other jurisdictions had consistently held that an in-

surer is entitled to reimbursement where the insurer (1) timely and explicitly reserves its right to recoup the costs; and (2) provides specific and adequate notice of the possibility of reimbursement. 309 F.3d at 919. "The general rule thus appears to be that, if these conditions are met, a reservation of rights is enforceable even absent an express agreement by the insured." *Id.* The court went on to analyze Ohio contract law and concluded that the reservation of rights letter and the insured's acceptance of the defense created an implied in fact contract which entitled the insurer to reimbursement of its defense costs. In further support of its holding, the court reasoned that "allowing the insurer to recover under an implied in fact contract theory [so long as it meets the aforementioned prerequisites] promotes the policy of ensuring defenses are afforded even in questionable cases." The court continued:

> When an insurer conditions payment of the defense costs on the condition of reimbursement if the insurer has no duty to defend, the condition becomes part of an implied in fact contract when the insured accepts payment. When faced with a reservation of rights, the insured can choose to: 1) decline the offer, pay for the defense, and seek to recover on the policy; 2) decline the offer and file a declaratory judgment action; or 3) accept the offer subject to the reservation of rights.

*Id.* at 921.

In *Colony Insurance Co. v. G & E Tires & Service, Inc.*, 777 So.2d 1034 (Fla.Ct. App.2000), the court reviewed cases from other jurisdictions and determined that the insurer was entitled to reimbursement:

> These authorities persuade us that Colony is entitled to reimbursement in the circumstances of the present case. Colony's reservation of rights and appoint-

ment of mutually agreeable counsel makes any claim that G & E detrimentally relied on the defense it received at Colony's expense untenable. G & E is no worse off than if it had itself retained the lawyer whom Colony and G & E agreed should handle its defense. In that event, too, G & E would have been responsible for the lawyer's bills. Colony timely and expressly reserved the right to seek reimbursement of the costs of defending clearly uncovered claims, which it consistently identified as such. Having accepted Colony's offer of a defense with a reservation of the right to seek reimbursement, G & E ought in fairness make Colony whole, now that it has been judicially determined that no duty to defend ever existed.

*Id.* at 1039. The court also looked to basic contract law and stated that "[a] party cannot accept tendered performance while unilaterally altering the material terms on which it is offered." *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981)). Consequently, the court found that when the insured accepted its defense, it also accepted the terms of the offer, including the potential for reimbursement. *Id.*

This issue was also addressed in *Cincinnati Insurance Co. v. Grand Pointe, LLC*, 501 F.Supp.2d 1145 (E.D.Tenn.2007). There, the insurer provided a timely and explicit notice of its reservation of the right to seek reimbursement for costs incurred in the underlying litigation and then proceeded to defend the insured. *Id.* at 1168. The court found that the facts of the case established a "quasi-contract implied, at least, in law," based upon the insured's acceptance of the insurer's defense without objection for nearly six months. *Id.* The court rejected the defendants' argument that they were presented with a Hobson's choice because the defendants did not present any evidence that they told the insurer to cease payment of defense costs or told the insurer to make

an election as to whether to defend under a reservation of rights or refuse to defend. *Id.* at 1169. "Defendants have presented no material evidence the provision of a defense under a reservation rights harmed them in any way." *Id.* Thus, the court concluded that the evidence established a right to reimbursement under a quasi-contract theory of unjust enrichment. *Id.*

It would be inequitable for Defendants to retain the benefits of the defense without repayment of the defense costs. Defendant[s] received the benefit of a defense they were not paying for, Defendants knew they were receiving a defense they were not funding, and Defendants were aware from RLI's reservation-of-rights letter that RLI[ ] claimed a right to reimbursement if it was determined RLI owed no duty to defend.

*Id.*

Conversely, the minority view is that insurers do not have this right. These courts "have refused to recognize claims by insurers for reimbursement of defense costs expended under a unilateral reservation of rights, absent a provision for such reimbursement in the insurance policy." *Gen. Star. Indem. Co. v. V.I. Port Auth.*, 564 F.Supp.2d 473, 477 (D.V.I.2008). "Courts disallowing such claims for reimbursement generally reason that an insured is not unjustly enriched when an insurer agrees to defend against uncovered claims under a reservation of rights." *Id.* at 477–78.

The Third Circuit explained its reasoning for rejecting a right of reimbursement, stating that

[a] rule permitting such recovery would be inconsistent with the legal principles that induce an insurer's offer to defend under reservation of rights. Faced with uncertainty as to its duty to indemnify, an insurer offers a defense under reser-

vation of rights to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify. At the same time, the insurer wishes to preserve its right to contest the duty to indemnify if the defense is unsuccessful. Thus, such an offer is made at least as much for the insurer's own benefit as for the insured's. If the insurer could recover defense costs, the insured would be required to pay for the insurer's action in protecting itself against the estoppel to deny coverage that would be implied if it undertook the defense without reservation.

*Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1219–20 (3d Cir.1989).

The Illinois Supreme Court also rejected a right of reimbursement:

[W]e cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it is later determined that the insurer did not owe a defense. Certainly, if an insurer wishes to retain its right to seek reimbursement of defense costs in the event it later is determined that the underlying claim is not covered by the policy, the insurer is free to include such a term in its insurance contract. Absent such a provision in the policy, however, an insurer cannot later attempt to amend the policy by including the right to reimbursement in its reservation of rights letter.

*Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 164, 293 Ill.Dec. 594, 828 N.E.2d 1092 (2005). *See also United Nat'l*, 309 F.3d at 925 ("[T]he creation of such a right [by way of a unilateral reservation of rights letter] ... amount[s] to a pro tanto supersession of the policy without separate agreement and separate consideration) (Clay, J., dissenting).

Another court rejecting the right explained its reasoning as follows:

The question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision. If an insurance carrier believes that no coverage exists, then it should deny its insured a defense at the beginning instead of defending and later attempting to recoup from its insured the costs of defending the underlying action. Where the insurance carrier is uncertain over insurance coverage for the underlying claim, the proper course is for the insurance carrier to tender a defense and seek a declaratory judgment as to coverage under the policy. However, to allow the insurer to force the insured into choosing between seeking a defense under the policy, and run the potential risk of having to pay for this defense if it is subsequently determined that no duty to defend existed, or giving up all meritorious claims that a duty to defend exists, places the insured in the position of making a Hobson's choice. Furthermore, endorsing such conduct is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract. If this became common practice, the insurance industry might extract coercive arrangements from their insureds, destroying the concept of liability and litigation insurance.

*Shoshone First Bank v. Pacific Employers Ins. Co.*, 2 P.3d 510, 516 (Wyo.2000) (quoting *American States Ins. Co. v. Ridco, Inc.*, Civ. No. 95CV158D, 1996 WL 33401184 (D.Wyo.1999)).

### 2. Georgia Case Law

■ As shown earlier, Georgia courts have upheld an insurer's use of a reservation of rights letter. *Jacore Systems, Inc.*, 194 Ga.App. at 514, 390 S.E.2d 876

More tellingly, and as also noted above, Georgia courts have held that by not objecting to a timely and proper reservation of rights and allowing an insurer to provide its defense, an insured "is deemed to have consented to the letter's terms." *Id.* (citing *State Farm, etc., Ins. Co. v. Anderson,* 104 Ga.App. 815, 818, 123 S.E.2d 191 (1961)). *See also State Farm Fire and Casualty Co. v. Walnut Avenue Partners,* 296 Ga.App. 648, 675 S.E.2d 534 (2009) ("Georgia law ... does not require an insured's signature on a reservation of rights form, but recognizes that an insurer can reserve its rights unilaterally or with the implied consent of the insured."). This case law supports the majority view and Illinois Union's argument that it is entitled to recoupment of its defense costs in the Underlying Action.

### 3. Findings and Conclusion

 Illinois Union promptly sent its reservation of rights to Michael McCarthy and Todd Schirner, who then forwarded it to NRI of Georgia. In that letter, Illinois Union stated that it reserved "the right to withdraw from the defense, to seek recoupment of any expenses incurred in the defense, to seek a declaration of its rights and its obligations, if any, and to decline any obligation to indemnify or defend." Weinberger Decl., Exh. 4, at 5. Thus, Illinois Union (1) timely and explicitly reserved its right to recoup the costs;

and (2) provided specific and adequate notice of the possibility of reimbursement. *United Nat'l Ins. Co.,* 309 F.3d at 919. NRI of Georgia accepted its insurer's defense without objection and enjoyed free legal defense of claims Illinois Union had no duty to defend. The court finds the majority view more persuasive and supported by Georgia case law. A right of reimbursement is justified under either an unjust enrichment or implied in fact contract theory. Therefore, the court concludes that under the circumstances as presented here, the Supreme Court of Georgia would adopt the majority approach, and that Illinois Union is entitled to recoupment of its legal costs expended defending NRI of Georgia in the Underlying Action.[4]

Illinois Union is directed to file a motion seeking reasonable expenses within twenty (20) days of the date of this order. That motion must comply with *Norman v. Housing Authority,* 836 F.2d 1292 (11th Cir.1988) (Forrester, J.), and *ACLU v. Barnes,* 168 F.3d 423 (11th Cir.1999).[5]

### D. Motion for Default Judgment as to Jose Alonzo

Illinois Union filed suit against Defendants on August 4, 2010. Illinois Union avers that its process server was unable to serve Alonzo because he no longer resides at his last known address. According to

---

**4.** NRI of Georgia makes one final argument as to Illinois Union's reservation of rights letter. The letter stated that "[Illinois Union] reserves the right to withdraw from the defense, to seek recoupment of any expenses incurred in the defense, to seek a declaration of its rights and its obligations, if any, and to decline any obligation to indemnify or defend." Weinberger Decl., Exh. 4, at 5. NRI of Georgia argues that because Illinois Union used the word "and" instead of "or" in its letter, Illinois Union was required to seek all the aforementioned rights simultaneously. The court refuses to read the letter in this way

because it would lead to absurd results. Illinois Union could not withdraw from the defense before it had even begun providing that defense. Such an interpretation is tantamount to refusing to defend NRI of Georgia at all and would negate the purpose of the reservation of rights letter.

**5.** Although Illinois Union requested an evidentiary hearing to present such evidence, the court finds that such evidence can be properly presented in a motion with supporting documents.

Illinois Union, the current resident at Alonzo's last known address informed the process server that Alonzo had not lived at that address in over six months, left no forwarding address, and that they had no information as to Alonzo's present whereabouts. Illinois Union asserts it made several more efforts to locate Alonzo, but eventually filed a Motion for Service by Publication, which this court granted on January 14, 2011. On February 4, 2011, the Clerk of the Court issued Notice for Service by Publication. To date, no Answer has been filed by Alonzo. On June 8, 2011, the Clerk of the Court entered default as to Alonzo. Illinois Union filed the instant Motion for Default Judgment on June 13, 2011.

The court presumes that Illinois Union included Alonzo, the alleged tort victim, in this lawsuit so that he would be bound by any findings of the court. The court has reached its determination on the merits of the case based on the pleadings and briefs filed by Illinois Union and NRI of Georgia. Alonzo had notice and an opportunity to participate in the litigation, but failed to do so. The issue of res judicata, however, is not before the court. Any default entered against Alonzo would have no impact because a defendant does not admit legal conclusions when he defaults, only the well-pleaded allegations of the complaint. This case involved only insurance coverage issues that the court decided as a matter of law. The court therefore denies as moot Illinois Union's Motion for Default Judgment.

### III. Conclusion

The court GRANTS Plaintiff's Motion for Summary Judgment [32] and DENIES

AS MOOT Plaintiff's Motion for Default Judgment as to Jose Alonzo [44]. Plaintiff is DIRECTED to file a motion seeking reasonable expenses within twenty (20) days of the date of this order.