**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 24, 2016**

# In the Court of Appeals of Georgia

A16A0134. GEORGIA INTERLOCAL RISK MANAGEMENT PE-005
    AGENCY v. CITY OF SANDY SPRINGS, GEORGIA.

PETERSON, Judge.

Georgia Interlocal Risk Management Agency ("GIRMA") appeals the grant of a motion to dismiss its declaratory judgment action. GIRMA argues that an exclusion in the agreement bars coverage and thus it should not have to continue defending the lawsuit, and that it is entitled to recoup some of its defense costs. We agree with GIRMA that the exclusion applies to bar coverage for the underlying lawsuit, thus freeing GIRMA from its duty to defend.[1] However, we affirm the trial court's finding

---

[1] The City of Sandy Springs requested on its motion for reconsideration that we make clear our opinion does not decide its affirmative defenses of waiver and estoppel, which were not raised in the City's motion to dismiss or before this Court. It is, of course, axiomatic that "a decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding — but actually exceeds the scope of the case's factual

that GIRMA is not entitled to recoup defense costs because even if Georgia law permitted an insurer to recoup defense costs where there is no contractual provision permitting such recovery, GIRMA did not timely seek to reserve such a right.

GIRMA is a risk-sharing arrangement wherein municipalities contract to pool their general liability risks. OCGA § 36-85-2. Although technically not an insurance company or insurer, "[a] municipality that enters a GIRMA coverage agreement in effect purchases liability insurance." *GIRMA v. Godfrey*, 273 Ga. App. 77, 78 (614 SE2d 201) (2005); *see also* OCGA § 36-85-4. The City of Sandy Springs (the "City") participated in the GIRMA program from about December 1, 2005 to May 1, 2012. The coverage agreement (the "Contract") obtained by the City provided coverage for Errors and Omissions — and specifically coverage for money damages incurred by a Member arising from any Wrongful Act committed during the coverage period (which includes alleged constitutional violations).

On June 30, 2006, several owners and operators of establishments offering nude dancing and/or selling sexually explicit merchandise filed suit against the City

context — is not a holding no matter how much it sounds like one." *Classic Commer. Servs. v. Baldwin*, 336 Ga. App. 183, 190 (784 SE2d 44) (2016) (Peterson, J., concurring fully and specially). As the City's defenses of waiver and estoppel are not at issue on this appeal, nothing in this decision should be understood as deciding them.

in the Northern District of Georgia ("*Flanigan's I*"). The suit challenged the constitutionality of the City's ordinances regulating adult entertainment industries within city limits, and sought declaratory and injunctive relief from the City, as well as compensatory and punitive damages from the then-unidentified city manager. GIRMA provided the City with a defense in the suit. The plaintiffs subsequently dismissed the suit voluntarily.

On October 5, 2009, the plaintiffs refiled their federal suit against the City asserting the same constitutional challenge, but this time seeking only declaratory and injunctive relief ("*Flanigan's II*"). GIRMA again provided a defense to the suit, but under a reservation of rights. GIRMA's reservation of rights letter made clear that GIRMA was providing a defense to the City in *Flanigan's II* but was reserving its right to deny coverage based on an exclusion in the Contract. In particular, GIRMA cited Exclusion E, which states that coverage does not apply to "any claim arising out of or in any way connected with any claim seeking equitable relief, redress or any other claim seeking relief in any form other than money damages."

The first time the plaintiffs amended their complaint, they still did not seek money damages. The City then filed a separate nuisance action in Fulton County

Superior Court against the plaintiffs, seeking injunctive relief.[2] The plaintiffs, in turn, filed a second amended complaint on June 20, 2012, seeking nominal and compensatory damages for the City's allegedly retaliatory conduct in filing the nuisance action.

GIRMA sent a revised reservation of rights letter on February 1, 2013, indicating that it was still providing a defense, but reiterated its reservation of the right to deny coverage under, among other things, Exclusion E. In the revised letter, GIRMA for the first time explicitly reserved the right to recover future advanced defense costs from that date forward if it was determined that GIRMA was not obligated to defend the claim. GIRMA requested that the City consent to the provision of a defense subject to these reservations by signing and returning the letter, and indicated that the City's refusal to consent or return the letter as requested would result in GIRMA immediately filing a declaratory judgment action to determine its coverage and defense obligations. The City did not sign or otherwise respond to the revised reservation of rights letter.

---

[2] The nuisance action also included a catch-all provision in the prayer for relief, seeking all other relief as the court "deems just and proper[,]" including "damages, and other monetary relief[.]"

4

Later in *Flanigan's II*, on April 9, 2014, the District Court granted the City's motion for summary judgment with respect to the plaintiffs' claims over the filing of the nuisance action. Neither party appealed the Court's order.

Following the court's order in *Flanigan's II*, GIRMA filed suit against the City on July 11, 2014, seeking a declaratory judgment that no coverage exists for *Flanigan's II*, GIRMA is not obligated to provide a defense to the City in that lawsuit, and it is entitled to defense costs starting from the date of its revised reservation of rights (the "Declaratory Judgment Action"). The City moved to dismiss the suit, arguing GIRMA had a duty to defend as a matter of law and could not withdraw its defense until the City was protected by a final judgment on all potentially or arguably covered claims. The trial court agreed, granted the City's motion, and dismissed GIRMA's Declaratory Judgment Action. This appeal followed.

"We apply a de novo standard of review to the trial court's grant of a motion to dismiss. A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim." *Alcatraz Media, LLC v. Yahoo! Inc.*, 290 Ga. App. 882, 882 (660 SE2d 797) (2008) (citations omitted). Further, in reviewing the grant of a motion to dismiss, we "must construe the pleadings in the light most

favorable to the appellant with all doubts resolved in the appellant's favor." *Ewing v. City of Atlanta*, 281 Ga. 652, 653 (2) (642 SE2d 100) (2007). Although GIRMA is not technically an insurance company or insurer, we apply principles of insurance law in analyzing coverage issues. *See, e.g.*, *City of College Park v. Georgia Interlocal Risk Mgmt. Agency*, 313 Ga. App. 239, 243-44 (2) (721 SE2d 97) (2011).

1. The Contract entitled the City to coverage for Errors and Omissions — and specifically money damages incurred by a Member arising from any Wrongful Act committed during the coverage period. The Contract's definition of a "Wrongful Act" includes alleged constitutional violations, and *Flanigan's II* alleged constitutional violations. GIRMA concedes the allegations in *Flanigan's II* constitute a "Wrongful Act," bringing the claim within the insuring clause, but argues that Exclusion E excludes coverage and negates its duty to defend. Therefore, the first issue we must address is whether Exclusion E operates to exclude coverage for *Flanigan's II* under the policy. If there is no coverage, GIRMA does not have a duty to defend. *See Penn-American Ins. Co. v. Disabled Am. Veterans, Inc.*, 268 Ga. 564, 565 (490 SE2d 374) (1997) (where the complaint sets forth true factual allegations showing no coverage, the insurer is excused from providing a defense). We conclude that the claims arise

6

out of claims seeking equitable relief, Exclusion E applies, and thus GIRMA has no duty to defend.

*Exclusion E of the Contract*

Exclusion E states that coverage does not apply to "any claim arising out of or in any way connected with any claim seeking equitable relief, redress or any other claim seeking relief in any form other than money damages." We have previously defined "arising out of" to mean "had its origins in," "grew out of," or "flowed from." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 498 (1) (646 SE2d 682) (2007). "Moreover, we have also held that the term 'arising out of' does not mean proximate cause in the strict legal sense . . . . Almost any causal connection or relationship will do." *Id.* (citations omitted). In determining whether claims "arise out of" excluded conduct, we conduct a "but for" analysis. *See City of College Park*, 313 Ga. App. at 243-45 (2); *Continental Cas. Co. v. H.S.I. Finan. Svs., Inc.*, 266 Ga. 260, 262 (466 SE2d 4) (1996). "Claims arise out of excluded conduct when 'but for' that conduct, there could be no claim against the insured." *Video Warehouse, Inc. v. Southern Trust Ins. Co.*, 297 Ga. App. 788, 791 (678 SE2d 484) (2009).

*Contract Provisions And Their Relation to Exclusion E*

When interpreting a contract, we look to that contract's language. In the Contract, the capitalized term "Claim" is defined as "a demand against a Member or by a Member for money damages for compensable losses." Exclusion E uses the word "claim," but does not capitalize it. Although failure to capitalize a term does not always mean that the uncapitalized term lacks the capitalized term's specifically defined meaning, under the circumstances here, we conclude that the word should be interpreted according to its normal and ordinary usage. As defined in the Contract, the capitalized term "Claim" means a demand for money damages. But as used in the exclusion, the uncapitalized term "claim" is intended to mean those demands for something *other* than money damages. Moreover, GIRMA conceded at oral argument that the term "claim" as used in the exclusion is intended to have its ordinary meaning, and the City did not disagree.[3] Accordingly, in analyzing the applicability of Exclusion E in the case at hand, we consider the word "claim" according to its normal and ordinary usage.

---

[3] This conclusion is bolstered by the bizarre results obtained using the defined term. Exclusion E would provide that coverage does not apply to: "any [demand . . . for money damages] arising out of or in any way connected with any [demand . . . for money damages] seeking equitable relief, redress or any other [demand . . . for money damages] seeking relief in any form other than money damages." This construction would be incoherent.

8

Under its ordinary usage, a claim is defined as "a demand for something rightfully or allegedly due" or "a right . . . to something." Webster's New World Dictionary 261 (2d College ed. 1972).[4] Here, "claim" used in its ordinary sense is broad enough to encompass the claims made in *Flanigan's II* and in the nuisance action. The nuisance action asserted claims seeking injunctive relief.[5] The first two complaints in *Flanigan's II* did not seek monetary damages for any of the plaintiffs' claims. But the second amended complaint did, and that is the operative complaint now at issue in *Flanigan's II*. The question, then, is whether the claims in the second amended complaint arose out of a claim seeking equitable relief or relief in a form

---

[4] We previously noted the definition of "claim" under Black's Law Dictionary as a "cause of action" or "demand for money or property," with "demand" being defined as an "assertion of a legal right." *See Patterman v. Travelers, Inc.*, 235 Ga. App. 784, 786 (510 SE2d 307) (1998), *aff'd* 272 Ga. 251.

[5] We acknowledge that the City also included a catch-all prayer for relief seeking "such other relief . . . as [the] Court deems just and proper[,]" including "damages, and other monetary relief against Defendants[.]" But this general catch-all clause in the prayer for relief does not convert the action into one for monetary damages where the complaint otherwise fails to set forth a basis for money damages. Otherwise, all lawsuits seeking "such other relief as the court deems necessary, just, and proper," or some variation thereof, as is often included as a matter of course, would precipitate a duty to defend. *See, e.g., Clemons v. State Farm Fire and Cas. Co.*, 879 S.W.2d 385, 393 (Tex. Ct. App. 1994).

other than money damages, such that it would fall within the exclusion at issue here. We conclude that they did.

The claims in the second amended complaint "grew out of" those asserted in the first two complaints filed in the *Flanigan's II* action that originally sought only declaratory and injunctive relief. The claims in the second amended complaint also "flowed from" the filing of the nuisance action, because the second amended complaint specifically asserted an additional claim pertaining to the alleged implications from the filing of the nuisance action. But for the filing of *Flanigan's II* and the nuisance action, the claims in the second amended complaint in *Flanigan's II* would not exist. Thus, the claims asserted in the second amended complaint in *Flanigan's II* fall within Exclusion E, and therefore no coverage, and relatedly, no duty to defend, exists. Insurance coverage is a matter of contract between the insurer and the insured, and this Court "will not strain to extend coverage where none was contracted or intended." *Jefferson Ins. Co. of New York v. Dunn*, 269 Ga. 213, 216 (496 SE2d 696) (1998). "[A]n insurance company is free to fix the terms of its policies as it sees fit, so long as such terms are not contrary to law, and it is equally free to insure against certain risks while excluding others." *Continental Cas. Co.*, 266 Ga. at 262.

10

*The City's Hypotheticals*

The hypothetical scenarios proposed by the City in its brief do not change our analysis. The City conjured the following scenarios that it says would give rise to a parade of horribles resulting from our conclusion that Exclusion E applies:

- The City contracts with a business to maintain a park, but the business bans demonstrations in the park. A lawsuit is filed against the City and the business seeking money damages. GIRMA defends, but then the City learns the business made material misrepresentations during contract negotiations, so the City files a cross-claim in equity to rescind the contract. Coverage vanishes because the lawsuit is "connected with any claim seeking equitable relief."

- Employees allege the City negligently administers its benefits program and sue for money damages, and the employees later threaten to release personnel records that support their case but also reveal confidential information about other employees not involved in the suit. GIRMA defends, and the City or the employees whose personal information is threatened seek a temporary restraining order. Coverage vanishes because the lawsuit is "connected with any claim seeking equitable relief."

11

In each of the proposed scenarios above, the initial action includes a claim for money damages, out of which a later request for equitable relief arises. But here, the situation is the converse — that is, the initial action was one for equitable relief that only later gave rise to a claim for money damages. Prior to *Flanigan's II,* the claim at issue did not only "arise out of" claims seeking equitable relief, they were claims seeking *only* equitable relief. Our analysis is limited to specific language in the exclusion: whether GIRMA's claim for declaratory judgment "arise[s] out of . . . any claims seeking equitable relief, redress or any other claim seeking relief in any form other than money damages." How coverage may shift under other language in the exclusion in scenarios imagined by the City does not affect our decision on the actual dispute before us. The trial court erred in granting the City's motion to dismiss GIRMA's Declaratory Judgment Action, and we reverse.

2. Because we agree that GIRMA does not have a duty to defend, we must now address GIRMA's claim that it is entitled to recover litigation costs in *Flanigan's II* incurred subsequent to the issuance of its revised reservation of rights letter on February 1, 2013. GIRMA does not point to any provision in the insurance agreement granting it the right to recoup defense costs. GIRMA instead argues that the City impliedly agreed that GIRMA would be able to recover defense costs by

12

continuing to accept GIRMA's defense even after the amended reservation of rights letter that, as of February 1, 2013, included a reservation of the right to seek reimbursement of defense costs on uncovered claims, thus creating an implied-in-fact contract. GIRMA alternatively argues that it would constitute unjust enrichment for the City to receive a free defense where no coverage exists. The issue of whether insurers are entitled to recoup defense costs where there is no contractual provision creating such a right is an issue of first impression in Georgia courts, but we need not reach that issue here.

We recognize that "[n]ationally, courts are split as to whether an insurer has a right to reimbursement of defense fees paid where it is determined that the insurer had not duty to defend." *Illinois Union Ins. Co. v. NRI Const. Inc.*, 846 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012) (citing *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 714 (8th Cir. 2009)). The "majority" view held by courts recognizes an insurer's right to reimbursement of defense costs and fees where it is determined that the insurer had no duty to defend. *See Westchester*, 563 F.3d at 714. This view is typically supported by two theories — an implied contract or the quasi-contractual theory of unjust enrichment.

13

GIRMA cites authority from the Northern District of Georgia, *Illinois Union Insurance Co. v. NRI Construction Inc.*, 846 F. Supp. 2d 1366 (N.D. Ga. 2012), in which the Northern District predicted how Georgia courts would interpret the issue. *Id.* at 1374-77 (II)(C)(1). In *Illinois Union*, the Northern District found the majority view among the nation's courts to be the most persuasive based on theories of implied in fact contract and unjust enrichment. *Id.* at 1377 (II) (C) (3). That view holds that where no contractual provision exists, a right to recoup defense costs still exists where the insurer timely and explicitly reserved that right. *Id.* GIRMA argues Georgia courts should apply the majority rule recognized in *Illinois Union*.

But even if we were to adopt the rule urged by GIRMA,[6] its reservation of the right to seek reimbursement of defense costs was not timely here. GIRMA first began providing a defense in *Flanigan's II* in 2009, subject to its initial reservation of rights. It did not send a revised reservation of rights reserving its right to seek defense costs until 2013.[7] That GIRMA limited its request for defense costs to those it would incur

---

[6] We make no such holding here. *See PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("if it is not necessary to decide more, it is necessary not to decide more.").

[7] GIRMA sought reimbursement of defense costs from the date of the revised reservation forward.

14

moving forward from the amended reservation does not change the analysis as to whether it acted reasonably promptly in reserving the right in the first instance. *See, e.g.*, *Builders Ins. v. Tenenbaum*, 327 Ga. App. 204, 210 (1) (757 SE2d 669) (2014) (an insurer "must act reasonably promptly" in preserving its rights to assert a particular ground for noncoverage). If GIRMA actually has a right to recoup defense costs in this case, then such a right would have existed in 2009, four years before it atempted to reserve that right. GIRMA argues the delay was reasonable because until the Northern District's decision in *Illinois Union* in 2012, it did not have a basis under Georgia law to make this reservation. But GIRMA's argument misunderstands the nature of decisions of federal courts interpreting Georgia law. The Northern District did not make Georgia law in *Illinois Union.* The court merely predicted how Georgia courts would rule, and it based this prediction on the same case law available to GIRMA. Therefore, GIRMA was in the same position and had the same ability to make such a prediction itself, and to issue a timely reservation accordingly. It did not do so and cannot now seek to collect despite its failure.

*Judgment affirmed in part and reversed in part. Phipps, P. J., and Dillard, J., concur*.