[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 21-11758

————————————————

CONTINENTAL CASUALTY COMPANY,
VALLEY FORGE INSURANCE COMPANY,

Plaintiffs-Appellants-
Cross Appellees,

*versus*

WINDER LABORATORIES, LLC,
STEVEN PRESSMAN,

Defendants-Appellees-
Cross Appellants,

CONCORDIA PHARMACEUTICALS, S.A.R.L.,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:19-cv-00016-RWS

_____

Before WILSON, BRANCH, and LAGOA, Circuit Judges.

BRANCH, CIRCUIT JUDGE:

Continental Casualty Company and Valley Forge Insurance Company (collectively, "the insurers") and Winder Laboratories, LLC and Steven Pressman (collectively, "the insureds") appeal and cross-appeal from the district court's judgment in this insurance coverage dispute. In short, the parties' insurance agreements required the insurers to defend the insureds against certain third-party lawsuits. After being sued by non-party Concordia Pharmaceuticals Inc., S.A.R.L. ("Concordia"), the insureds sought coverage under the policies. The insurers agreed to defend the insureds against Concordia, subject to a reservation of rights, including the right to seek reimbursement of defense costs incurred for claims not covered by the policies. The insurance agreements themselves, however, did not provide for reimbursement.

This appeal presents two questions. The more straightforward question is whether the insurers had a duty to

defend the insureds against the Concordia action. Then, as a matter of first impression under Georgia law, we must decide whether a reservation of rights letter that includes a right to reimbursement entitles an insurer to reimbursement of defense costs even though the underlying insurance contract does not include such a right. The district court granted judgment on the pleadings to the insurers on the first issue—holding that an exclusion in the contract meant there was no duty to defend—but granted summary judgment to the insureds on the second issue— holding that the insurers had no right to reimbursement. For the reasons below, and with the benefit of oral argument, we affirm both determinations.

## I.    Background

### A.    Facts

In 2015, Winder Laboratories, LLC ("Winder")—a generic pharmaceutical manufacturer managed by Steven Pressman— purchased two insurance policies: a Primary General Liability Policy from Valley Forge Insurance Company ("VFI") and an Umbrella Policy from Continental Casualty Company ("Continental"). The materially identical policies required the insurers to "defend the insured[s] against any 'suit'" seeking damages for "personal and advertising injury." In pertinent part, "personal and advertising injury" was defined to include an injury "arising out of" either "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or

services" or "[t]he use of another's advertising idea in [the insureds'] 'advertisement.'"[1]  The policies also had a "failure to conform" provision that excluded coverage for injuries "[a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made in [the insureds'] 'advertisement.'"    Notably, neither policy included a reimbursement provision allowing the insurers to recoup defense costs.[2]

On January 6, 2016, Concordia sued Winder and Pressman in the United States District Court for the Northern District of Georgia, asserting various claims under the Lanham Act and Georgia law.[3]  In the Concordia action, the Fourth Amended Complaint became the operative complaint after a series of claim dismissals and amendments.[4]  The crux of Concordia's Fourth

---

[1] Advertisement is also defined in the policy: "'Advertisement' means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

[2] The policies also did not define the details of the defense.  For example, the policies did not mention which party would choose defense counsel if the insureds were sued.

[3] We call this lawsuit the "underlying litigation" or "Concordia action" throughout this opinion.

[4] Concordia's initial complaint included eight claims.  After a series of motions to dismiss and several amended complaints, the operative complaint (Fourth Amended Complaint) asserted the following claims: false advertising in violation of Lanham Act § 43(a)(1)(B); contributory false advertising in violation of Lanham Act § 43(a)(1)(B); common law unfair competition;

21-11758                 Opinion of the Court                          5

Amended Complaint was that Winder "falsely or misleadingly advertised their B-Donna product, and subsequently their Phenohytro product, as generic [equivalents] to [Concordia's product] DONNATAL directly to the pharmaceutical industry, including to potential purchasers."

In light of the Concordia action, on February 19, 2016, the insurers jointly sent the insureds a letter agreeing to provide their defense—subject to a fairly standard reservation of rights to disclaim coverage. Importantly, however, the letter also included a not-so-standard reimbursement provision: "VFI specifically reserves its right to seek reimbursement of defense costs incurred on [the insureds'] behalf for all claims which are not potentially covered by the VFI Policy."[5] Pressman—on behalf of the insureds—signed and returned an "Acknowledgement of Defense under a Reservation of Rights," that noted "[the insureds] elect to retain independent counsel[6] to represent them in the Underlying

---

violations of the Georgia Uniform Deceptive Trade Practices Act; and tortious interference with contract or business relationships.

[5] This letter did not specify a similar right to seek reimbursement for Continental. But, as the underlying litigation proceeded (eventually reaching a Fourth Amended Complaint), the insurers sent updated reservation of rights letters that eventually included a right to reimbursement for *both insurers* (not just VFI): "[T]he [insurers] reserve their rights to disclaim coverage and seek reimbursement of legal fees and costs."

[6] In the reservation of rights letters, the insurers provided the insureds this option:

> VFI will retain counsel to represent you and Winder in the Underlying Suit. Alternatively, you and Winder can retain

Suit, subject to [VFI's] reservation of rights . . . ."

### B.    Procedural History

During the pendency of the Concordia action, on January 17, 2019, the insurers filed suit in the Northern District of Georgia seeking a declaratory judgment that they had no duty to defend or to indemnify the insureds under the policies and were entitled to "reimbursement of legal costs and fees spent in providing [the insureds] a defense" in the Concordia suit under the reservation of rights. Following the insureds' answer denying that both the insurers had no duty to defend and that the insurers were entitled to reimbursement, the insurers moved for judgment on the pleadings. Focusing on the duty to defend, they argued that they had no duty to defend the insureds against Concordia's operative complaint because Concordia did not allege a "personal or advertising injury," and—even if there were such an injury—the "failure to conform" provision excluded coverage. The district court granted the insurers' motion, holding that Concordia's allegations were "squarely" excluded by the "failure to conform" provision because the "operative complaint [was] based entirely upon allegations that [Winder] misrepresented the quality" of

---

counsel of your choice to represent you in this matter. If Winder elects to retain its own defense counsel, please be advised that VFI will only agree to reimburse you or Winder for necessary and reasonable defense costs incurred by defense counsel at a rate charged by commensurate counsel typically retained by VFI in the Northern District of Georgia, where the suit is pending.

Winder's products.[7]  The court also noted that the insurers had "not shown entitlement to reimbursement [for defense costs already paid]," and encouraged the parties to confer "in an effort to resolve any remaining dispute regarding the reimbursement issue." The insureds moved for reconsideration, which was denied.  After this ruling, the insurers stopped paying for the insureds' defense.

In November 2020, having not reached an agreement, the parties cross-moved for summary judgment on the insurers' reimbursement claim.  The district court denied the insurers' motion and granted the insureds'.  The district court noted that the question presented—whether an insurer had a right to reimbursement when that right was included only in a reservation of rights letter but not the parties' insurance contract—was an open question under Georgia law.  The district court found in favor of the insureds, reasoning that an effective reservation of rights necessarily required a preexisting contract right: "[A]bsent a provision in the insurance policy—or some other express agreement—an insurer who issued an otherwise valid, unilateral reservation of rights cannot recoup its defense fees or costs."

The insurers appeal the district court's reimbursement decision and the insureds cross-appeal the duty to defend determination.

---

[7] The district court did not address whether Concordia's allegations presented a "personal and advertising injury" because the "failure to conform" exclusion was dispositive as to the insurers' duty to defend.

## II.    Standard of Review

We review a "district court's grant of judgment on the pleadings *de novo.*" *Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998) (per curiam). Judgment on the pleadings is appropriate when "there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "We must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.*

We review a district court's summary judgment determinations *de novo*. *Great Am. All. Ins. Co. v. Anderson*, 847 F.3d 1327, 1331 (11th Cir. 2017). In this posture, "[w]e view the evidence and draw all reasonable inferences in favor of . . . the party opposing summary judgment." *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1272 (11th Cir. 2020). The moving party must "show[] that there is no genuine dispute as to any material fact" so that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

Because this federal action is premised on diversity jurisdiction, "Georgia's substantive law governs." *AEGIS Elec. & Gas Int'l Servs. Ltd. v. ECI Mgmt. LLC*, 967 F.3d 1216, 1223 (11th Cir. 2020).

## III.    Discussion

We start with the insureds' cross-appeal on the duty to defend before considering the insurers' appeal of the

reimbursement decision.

### A.    Duty to Defend

The insureds argue that because Concordia alleged a "personal and advertising injury," which is a covered claim, the insurers were obligated to defend the insureds against the Concordia action. Specifically, the insureds argue that Concordia's complaint alleged a "personal and advertising injury" because it included allegations that Winder copied Concordia's DONNATAL label inserts.[8] The insurers argue that no "personal and advertising injury" was alleged; rather, they contend that Concordia's allegations of false and misleading advertising triggered the "failure to conform" exclusion such that there was no coverage under the policies. The district court held that the allegations fell under the "failure to conform" exclusion, and the insurers had no duty to defend. We agree with the insurers and the district court.

---

[8] The insureds did not make this label-copying argument until their motion for reconsideration. Generally, parties cannot use motions for reconsideration "to relitigate old matters, raise argument[,] or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). As the district court noted, it was improper for the insureds to make these arguments for the first time in their motion for reconsideration. Nevertheless, the district court addressed the merits of the new argument. Accordingly, we will consider the merits of this argument as well. However, because we are considering the district court's ruling in the context of its denial of the insureds' motion for reconsideration, we review the denial of the motion for reconsideration for abuse of discretion and review the underlying legal conclusions *de novo*. *See Equity Inv. Partners, LP v. Lenz*, 594 F.3d 1338, 1342 (11th Cir. 2010).

Whether the insurers have a duty to defend the insureds against the underlying litigation hinges on whether Concordia's contributory false advertising claim was based on Winder's alleged label copying.[9]  If so, the alleged injury arose out of "[Winder's] use of another's advertising idea"—*i.e.*, Concordia's labels—and the insurers have a duty to defend under the "personal and advertising injury" provision.  If, however, the claim rested on allegations that Winder actively misrepresented its drugs, then the alleged injury arose from the "failure of goods . . . to conform with any statement of quality or performance made in [the insureds'] 'advertisement,'" and the insurers do not have a duty to defend under the "failure to conform" exclusion.

Georgia law treats insurance as "a matter of contract" so that "the parties to the contract of insurance are bound by its plain and unambiguous terms." *Lima Delta Co. v. Glob. RI-022 Aerospace, Inc.*, 789 S.E.2d 230, 233 (Ga. Ct. App. 2016) (quotation omitted). "The construction of an unambiguous contract is a question of law for the court." *Id.* (quotation omitted).

---

[9] The series of amendments and dismissals in the underlying litigation left contributory false advertising as the only claim that possibly relied on Concordia's label-copying allegations.  To make out a contributory false advertising claim under the Lanham Act, plaintiffs must (1) "show that a third party . . . directly engaged in false advertising that injured the plaintiff," and (2) "allege that the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Ams., Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015).

Under Georgia law, an unambiguous contract "must be enforced as written," and we should not expand "the rights of the parties to an insurance policy . . . beyond the terms of the policy." *Giddens v. Equitable Life Assurance Soc'y of the U.S.*, 445 F.3d 1286, 1297 (11th Cir. 2006). This principle is true even for "exclusions in insurance policies" that are normally "strictly construed against the insurer." *Fid. Nat'l Title Ins. Co. of N.Y. v. OHIC Ins. Co.*, 619 S.E.2d 704, 706 (Ga. Ct. App. 2005) (quotation omitted). That is, an exclusion that is "plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured." *Id.* (quotation omitted). Georgia courts counsel against "strain[ing] to extend coverage where none was contracted or intended." *Id.* (quotation omitted).

An insurer's duty to defend is determined by "comparing the allegations of the complaint with the provisions of the policy." *Pilz v. Monticello Ins. Co.*, 599 S.E.2d 220, 221 (Ga. Ct. App. 2004) (quotation omitted). Under Georgia law, when the policy uses the broad term "suit," the insurer has a duty "to defend the entire suit if any of the individual claims could be covered under the [p]olicy." *S. Tr. Ins. Co. v. Mountain Express Oil Co.*, 828 S.E.2d 455, 458 (Ga. Ct. App. 2019); *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998) ("If the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." (emphasis added)). If, however, the complaint "does not assert any claims upon which there would be insurance coverage, the insurer is

justified in refusing to defend the insured's lawsuit." *St. Paul Fire*, 498 S.E.2d at 784.

With Georgia law in mind, we now look to the operative complaint to see if Concordia's allegations relating to its contributory false advertising claim (a) triggered coverage under the "personal and advertising injury" provision or (b) triggered the "failure to conform" exclusion.[10] We hold that the "failure to conform" exclusion applied.

In the contributory false advertising count, Concordia focused on Winder's allegedly false and misleading representations about its products:

> [Winder] actively and materially furthered such false or misleading, or false and misleading, advertising and promotion of [its] B-Donna or Phenohytro products by making false or misleading, or false and misleading, representations about the products on their labels and product inserts, making false or misleading, or false and misleading representations to the Drug Databases to list [its] B-Donna or Phenohytro products with the Drug Databases, listing the products with the Drug Databases, and/or marketing the products as "generics" that are

---

[10] To reiterate a critical point, "personal and advertising injury" was defined to include "[t]he use of another's advertising idea in [the insureds'] 'advertisement.'"

comparable to and/or substitutable for [Concordia's] DONNATAL.

Thus, Concordia's contributory false advertising claim clearly rested on Winder's false and misleading representations—*not* its label copying. Accordingly, we conclude that the allegations in the complaint do not arise out of a "personal and advertising injury" stemming from "[t]he use of another's advertising idea"—*i.e.*, Concordia's labels—that would have required the insurers to defend the insureds against Concordia's Fourth Amended Complaint. *See Pilz*, 599 S.E.2d at 221; *St. Paul Fire*, 498 S.E.2d at 784 ("[W]here the complaint filed against the insured does not assert any claims upon which there would be insurance coverage, the insurer is justified in refusing to defend the insured's lawsuit.").

In fact, Concordia's count-specific allegation that Winder made "false or misleading" representations and statements about its products by "marketing the products as 'generics' that are *comparable to and/or substitutable for* [Concordia's] DONNATAL," is a textbook example of an injury "[a]rising out of the failure of goods, products or services to conform with any *statement of quality or performance* made in [Winder's] 'advertisement.'"[11] Thus, contrary to the insureds' argument, Concordia's allegation that

---

[11] Concordia's allegations also include that "[s]uch false or misleading, or false and misleading, statements about the B-Donna or Phenohytro products by Drug Databases, pharmacies, insurers and/or other members of the pharmaceutical industry have actually deceived or have the tendency to deceive a substantial segment of their audience as to the nature, quality, and characteristics of the B-Donna or Phenohytro products."

Winder marketed its products as comparable to Concordia's brand-name drug when it was not in fact equivalent falls squarely within the "failure to conform" exclusion of the insurance policy. Under Georgia law, we must give effect to this exclusion and cannot "strain to extend coverage where none was contracted or intended." *Fid. Nat. Title Ins. Co.*, 619 S.E.2d at 706.

The insureds resist our conclusion with the following counter-arguments.

For one, the insureds maintain that Concordia's complaint involved a "personal and advertising injury" because it included allegations of label copying. This statement is true. In the section of the complaint containing factual allegations, Concordia did reference label copying:

- "Upon information and belief, the labels and package inserts for [Winder's] B-Donna products have been copied from the labels and package inserts for [Concordia's] DONNATAL, including the 'Indications and Usage' section, which claims that the product has been reviewed and classified by FDA."

- "Upon information and belief, the labels and package inserts for [Winder's] Phenohytro products have also been copied from the labels and package inserts for [Concordia's] DONNATAL."

- "Upon information and belief, [Winder's] copying of [Concordia's] drug labels and product inserts was not done as part of a submission to the FDA or other

21-11758                Opinion of the Court                15

government agency, nor was it permitted or contemplated under any legislative provision authored by Congress."

But these factual allegations provided the foundation for some of Concordia's previously dismissed claims. The only thing tying the label-copying allegations to Concordia's false advertising count is that count's language incorporating by reference "each and every allegation contained in the [preceding] paragraphs." We conclude that this tangential connection—fastened through boilerplate language—is inconsequential because, as analyzed above, the actual count-specific allegations for the contributory false advertising claim centered on Winder's allegedly false and misleading representations about its products.[12]

Moving forward, the insureds also argue that the "failure to conform" exclusion does not apply because Concordia's false advertising claim stems from (1) false advertisements made by non-party drug databases (such that Winder is not responsible), and (2) true statements about Winder's products which cannot "fail . . . to conform with any statement of quality or performance . . . ."

---

[12] This discrepancy between the count-specific allegations, on the one hand, and the generalized factual allegations that do not actually go toward Concordia's contributory false advertising claim, on the other hand, is the reason the district court called the insureds' argument an attempt to "distort" the Fourth Amended Complaint.

First, we reject the insureds' argument that the "failure to conform" exclusion does not apply because only the third-party drug databases—not Winder—made the allegedly false statements. Their argument must fail because Concordia clearly alleged that Winder's initial misrepresentations to the drug databases were the "but for" cause of its injuries. *See Hays v. Ga. Farm Bureau Mut. Ins. Co.*, 722 S.E.2d 923, 927 (Ga. Ct. App. 2012) ("Claims arise out of [t]he excluded conduct when but for that conduct, there could be no claim against the insured." (quotations omitted)). Further, the allegations of Winder's initial involvement were necessary to Concordia's contributory false advertising claim, which required a showing that Winder "contributed to" the false advertising. *See Estée Lauder*, 797 F.3d at 1277.

Second, we also reject the insureds' argument that the "failure to conform" provision does not apply because the representations Winder made to the drug databases were true. At this juncture, our analysis looks only to the allegations in the complaint and the terms of the insurance agreement. *See Pilz*, 599 S.E.2d at 221 ("An insurer's duty to defend is determined by *comparing the allegations of the complaint* with the provisions of the policy." (emphasis added and quotation omitted)). And Concordia's complaint was littered with allegations that Winder misrepresented its drugs which in turn caused the drug databases to make misrepresentations. Accordingly, Concordia's allegations

(albeit not yet proven) triggered the "failure to conform" exclusion.[13]

In the end, after our close comparison of the complaint and insurance policies, we conclude that the "failure to conform" exclusion applied such that the district court properly determined that the insurers did not have an ongoing duty to defend the Fourth Amended Complaint.

B.    *Right to Reimbursement*

The duty to defend determination answers only the first of the two questions presented in this appeal. In other words, we have concluded that the insurers *no longer* have a duty to defend the Fourth Amended Complaint, but that does not mean that the insurers *never had* a duty to defend at earlier stages of the case. Rather, because insurers under Georgia law have a broad duty to defend when there is "even arguably" a covered claim, *see St. Paul Fire*, 498 S.E.2d at 784, the insurers had an active duty to defend *up*

_____

[13] Admittedly, we have not addressed the effect of literal truth on a "failure to conform" exclusion. We note, however, that the Eighth Circuit has considered an argument that an advertisement being "literally true" means that the allegations "do not fall within the scope of the failure-to-conform provision because they do not make a 'statement of quality or performance.'" *Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1175 (8th Cir. 2012). In rejecting this argument, the Eighth Circuit emphasized that, no matter if some statements were true, "[t]he underlying lawsuits allege[d] that Robinson misled consumers into buying hunting clothing that did not perform as it was advertised." *Id.* That is, the truthfulness of certain statements was not determinative because, in aggregate, the allegations that supported the claim were about deceit or misrepresentation.

*until the point* when the district court ruled otherwise.[14]  Simply put, under the facts of this case, the insurers were under a duty to defend until the district court ruled that they were not.

_____

[14] The insurers point to two of our cases as well as dicta from a Georgia case to argue that the duty to defend either does or does not exist at the time the complaint was filed.  These cases are not on point.  First, in our cases, there was unquestionably no duty to defend from the outset so there was never "even arguably" a basis for coverage.  *See Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC*, 713 F. App'x 951, 957 (11th Cir. 2017) (per curiam) (determining that there was "no duty to defend because [d]efendant was *never covered by the policy*" (emphasis added)); *Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900, 904 (5th Cir. 1972) ("The insurance policy excludes coverage for injury caused by these cranes while being used for loading.  Because the allegations 'unambiguously exclude coverage,' [e]mployers [were] not under a duty to defend . . . .").  The logic underlying these cases does not translate to this case in which an arguable duty to defend eroded into non-existence as the underlying litigation progressed from an initial complaint to a Fourth Amended Complaint with different allegations and claims.  Additionally, *Mt. Hawley*, 713 F. App'x at 957, is an unpublished case that has no precedential value.

Similarly, we put little stock in dicta from *Georgia Interlocal Risk Management Agency v. City of Sandy Springs*, 788 S.E.2d 74, 80 (Ga. Ct. App. 2016).  That case dealt with whether an insurer had a right to reimbursement of defense costs after it was determined that the insurer had no duty to defend.  *Id*. at 79–80.  In addressing the reimbursement issue, the Court of Appeals of Georgia stated in passing that if the insurer "actually has a right to recoup defense costs in this case, then such a right would have existed [at the time the complaint was filed]," and because the complaint was filed four years before the insurer attempted to reserve its right to reimbursement, its reservation was not timely made.  *Id*. at 80.  Contrary to the insureds' argument, the court's statement does not establish that it did not have a duty to defend from the initial filing of the complaint.  Moreover, the statement is dicta.  *See*

21-11758                Opinion of the Court                    19

This determination brings us to the second issue on appeal—whether, under Georgia law, asserting a right to reimbursement in a reservation of rights letter entitles an insurer to reimbursement even if the insurance contract did not contemplate a right to recoupment.  The district court answered that question in the negative and held that the insurers had no right to seek reimbursement.  The insurers argue that this determination was erroneous.

Following the insurers' line of argument, we break our analysis into two questions.  First, did the insurers' reservation of rights letters create a new contract?  We conclude that a new contract was not created and proceed to the second question that is novel under Georgia law: Would the Supreme Court of Georgia recognize a right to reimbursement absent a contractual right to such reimbursement?  *See Ga. Interlocal Risk Mgmt. Agency v. City of Sandy Springs*, 788 S.E.2d 74, 79 (Ga. Ct. App. 2016) ("The issue of whether insurers are entitled to recoup defense costs where there is no contractual provision creating such a right is an issue of first impression in Georgia courts, but we need not reach that issue here.").  We conclude that it would not and, therefore, affirm the district court.

---

*Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("[D]icta is not binding on anyone for any purpose.").

i.  Did the insurers' reservation of rights letters including a reimbursement provision create a new contract?

The insurers argue that the insureds implicitly and explicitly agreed to the terms of the reservation of rights letters which included the reimbursement provision.  This argument centers on a day-one principle of contract law: consideration.  We must decide whether the insurers' reservation of rights letters created a new contract—either explicitly (because one of the letters was signed by the insureds) or implicitly (because the insureds accepted the defense while aware of the letters' terms).[15]

Express contracts and implied-in-fact contracts are exceedingly similar.  *See Turfgrass Grp., Inc. v. Ga. Cold Storage Co.*, 816 S.E.2d 716, 721 (Ga. Ct. App. 2018).  The only difference is how the parties' will to be bound is shown—either "*expressly* in some form recognized by law" or "by circumstances from which assent may be *inferred* as a conclusion of fact."  *Id.* (emphasis added).  Both must meet the standard contract requirements.

---

[15] On summary judgment at the district court, the insurers did not contend that the reservation of rights letters constituted an express contract.  Rather, the insurers focused on an implied contract theory.  As such, there is support for waiving the insurers' express contract argument that was "raised for the first time on appeal," *see Finnegan v. Comm'r of Internal Revenue*, 926 F.3d 1261, 1271 (11th Cir. 2019), but because it fails for the same reason as their implied contract argument (lack of consideration), we do not undertake a waiver analysis.

"To constitute a valid contract, there must be parties able to contract, *a consideration moving to the contract*, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."  O.C.G.A. § 13-3-1 (emphasis added).  There is consideration when "a performance or a return promise [is] bargained for by the parties to a contract."  *Id.* § 13-3-42(a).  To be "bargained for," the performance or return promise must be "sought by the promisor in exchange for his promise and [] given by the promisee in exchange for that promise."  *Id.* § 13-3-42(b).  Importantly, "a promise to perform a preexisting contractual obligation does not constitute consideration for a new agreement." *Glisson v. Global Sec. Servs., LLC*, 653 S.E.2d 85, 87 (Ga. Ct. App. 2007); *see also, e.g.*, *Codner v. Siegel*, 271 S.E.2d 465, 466 (Ga. 1980) (discussing the need for "new consideration").

The original insurance contracts between the parties provided that insurers had the "duty to defend the insured[s] against any 'suit' seeking [] damages" for "'personal and advertising injury.'"  The policies did not expound on the details of the defense. For example, the policies did not mention which party would choose defense counsel if the insureds were sued.

In a series of reservation of rights letters that the insurers sent to the insureds after Concordia brought the underlying litigation, the insurers included terms that were not part of the original insurance contract.  Critically, the first letter specified that: "VFI specifically reserves its right to seek reimbursement of defense costs incurred on [the insureds'] behalf for all claims which

are not potentially covered by the VFI Policy."[16]  These letters also included more particulars for the legal defense, including that: "[The insurers] will retain defense counsel to represent [the insureds] in the Georgia Suit.  Alternatively, [the insureds] can retain counsel of [their] choice."  Pressman—on behalf of the insureds—signed and returned to the insurers an "Acknowledgement of Defense under a Reservation of Rights" in October 2018.

For the insurers' implicit and explicit contract arguments, the issue of consideration is dispositive.  The insurers argue that there was adequate consideration stemming from the reservation of rights letters in two ways: (1) the insureds were provided a defense and (2) the insureds were able to choose their defense counsel.  We hold that because the parties' contracts already required the insurers to defend the insureds against certain third-party lawsuits, there is no *new* consideration for the reimbursement provision in the reservations of rights letters and thus no *new* contract under Georgia law.

The insurers' first argument is easy to reject.  The underlying contract required the insurers to defend the insureds against certain third-party lawsuits.  The reservation of rights letters also provided for such defense.  That is, the letters were the quintessential "promise to perform a preexisting contractual

---

[16] This reimbursement language was also "incorporate[d] [] by reference" in the later reservation of rights letters, and the second insurer (Continental) eventually claimed the right to seek reimbursement as well.

obligation" that "does not constitute consideration for a new agreement." *Glisson*, 653 S.E.2d at 87; *see also Codner*, 271 S.E.2d at 466 (discussing the need for "new consideration").

The insurers' second argument is colorable—but still inadequate. The underlying contract did not contemplate which party would select legal counsel for the promised defense, but the reservation of rights letters gave the insureds the ability to either (a) choose their legal representation or (b) have it chosen for them by the insurers. Boiled down, the insurers went from having to provide a defense (under the underlying contract) to having to provide a defense through counsel of their own choosing or counsel chosen by the insureds (under the reservation of rights). Either way, however, the insurers were obligated to provide a defense. In other words, because the insurers did not have the explicit right to choose counsel for the insureds under the original contract, the insurers did not give anything up to reach the new arrangement wherein the insureds have the option of selecting their own counsel. As such, there is no consideration under Georgia law. *See* O.C.G.A. § 13-3-42(b).

### ii. Unjust Enrichment

Alternatively, the insurers contend that the insureds were unjustly enriched because they retained the benefit of an expensive defense to which they knew they were not entitled. *See Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016) ("[A] claim for unjust enrichment exists where a plaintiff asserts that the defendant induced or encouraged the plaintiff to provide something of value

to the defendant; that the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof; and that the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it."). Assuming the insurers' unjust enrichment argument does not immediately fail due to the existence of a written contract, it nonetheless fails on the merits. *Cf. Bogard v. Inter-State Assurance Co.*, 589 S.E.2d 317, 319 (Ga. Ct. App. 2003) ("[T]he existence of the contract between the parties precludes [appellant's] unjust enrichment claim."). Simply put, there is nothing "unjust" about requiring the insurers to fulfill their contractual obligations and imposing such a requirement would not confer a "windfall" on the insureds.[17]

---

[17] Further, there is no one-sided enrichment here. The insurers benefit from fulfilling their contractual obligations and following Georgia insurance law to avoid a lawsuit and maintain their reputation, among other things. To borrow applicable language from another state's supreme court: "[W]e cannot say that an insured is unjustly enriched when its insurer tenders a defense in order to protect its own interests, even if it is later determined that the insurer did not owe a defense." *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1103 (Ill. 2005); *see also Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1220 (3d Cir. 1989) (holding that, in a similar situation, the insurer provided a defense "at least as much for [its] own benefit"). And, while the insureds undoubtedly benefit from an expensive legal defense, that benefit is precisely the bargain the parties agreed to. There is no reason that the insureds should "return" or "compensate for" receiving the benefit of their bargain. *See Wachovia Ins. Servs., Inc. v. Fallon*, 682 S.E.2d 657, 665 (Ga. Ct. App. 2009) ("Unjust enrichment is an equitable concept and applies when . . . the party sought to be charged has been conferred a benefit by the party contending an

### iii.  Predicting Georgia Law on Reimbursement

The final question we face is whether, under Georgia law, an insurer can recoup defense costs when such a right is provided for in a reservation of rights letter but not the parties' operative insurance contract.  Georgia courts have not addressed this question.[18]  *See Ga. Interlocal*, 788 S.E.2d at 79.

Without any state court guidance, we attempt to "predict state law" without "creat[ing] or modify[ing] it."  *Salinero v. Johnson & Johnson*, 995 F.3d 959, 969 (11th Cir. 2021) (internal citations omitted); *see Bravo v. United States*, 577 F.3d 1324, 1325 (11th Cir. 2009) (per curiam) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)).  As part of this inquiry, we "consider whatever might lend [us] insight, including relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable

---

unjust enrichment *which the benefitted party equitably ought to return or compensate for.*" (emphasis added)).

[18] Federal district courts applying Georgia law have reached different, competing results.  We note only in passing that most district courts have held that insurers do not have a right to reimbursement in these situations.  *See, e.g.*, *Am. Fam. Ins. Co. v. Almassud*, 522 F. Supp. 3d 1263, 1269 (N.D. Ga. 2021) (adopting a "no-recoupment default rule" because in cases where the contract does not allow for recoupment but the reservation of rights letter inserts such a right, "the insurer should not be able to unilaterally alter the terms of an insurance policy").  Only one district court has held that insurers do have a right to reimbursement.  *See Ill. Union Ins. Co. v. NRI Constr. Inc.*, 846 F. Supp. 2d 1366, 1377 (N.D. Ga. 2012) ("A right of reimbursement is justified under either an unjust enrichment or implied in fact contract theory.").  Nevertheless, these decisions do not bind us.

data tending convincingly to show how the [Supreme Court of Georgia] would decide the issue at hand." *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th 1347, 1357 (11th Cir. 2022) (quoting *GuideOne Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005)). We "presume that [state] courts would adopt the majority view on a legal issue in the absence of indications to the contrary." *Id.* at 1358.

The duty to defend is extremely broad under Georgia law.[19] *See, e.g.*, *Landmark Am. Ins. Co. v. Khan*, 705 S.E.2d 707, 710 (Ga. Ct. App. 2011) ("[I]f the facts as alleged in the complaint *even arguably* bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. Indeed, to excuse the duty to defend the petition must unambiguously exclude coverage under the policy . . . ." (quotation omitted)); *St. Paul Fire*, 498 S.E.2d at 784. An insurer "may be obligated to defend, even though it [may not be] ultimately liable for any judgment . . . ." *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376–77 (Ga. 1997); *see also Elan Pharm. Rsch. Corp. v. Emps. Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) ("[U]nder Georgia law . . . [a]lthough an insurer need not indemnify an insured for a liability the insured incurs

---

[19] Under Georgia law, the "duty to defend and the duty to indemnify . . . are separate and independent obligations." *Nationwide Mut. Fire Ins. Co. v. Somers*, 591 S.E.2d 430, 433 (Ga. Ct. App. 2003) (quotation omitted); *see also Colonial Oil Indus. Inc. v. Underwriters Subscribing to Pol'y Nos. TO31504670 & TO31504671*, 491 S.E.2d 337, 339 (Ga. 1997). The broad duty to defend is "broader than [the insurers'] duty to indemnify." *Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007).

outside the terms of the insurance contract, an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage.").

As an initial matter, we disagree with the insurers' argument that there is a clear "majority" rule favoring recoupment across the nation. *See SA Palm Beach*, 32 F.4th at 1357 ("We therefore consider whatever might lend [us] insight, including . . . analogous decisions . . . scholarly works, and any other reliable data tending convincingly to show how the [Supreme Court of Georgia] would decide the issue at hand." (quotations omitted)). This description of a "majority rule" may have been correct in the past, but it is not an accurate depiction of the current case law, which appears to be more-or-less in equipoise with the recent trend favoring the "no recoupment" rule. *See Gen. Star Indem. Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 461 n.14 (E.D.N.Y. 2015) ("Although the parties dispute which is the majority rule in other jurisdictions, both parties referred to an article published by the American Bar Association in 2011, noting that '[t]here is a fairly even split among state and federal courts' concerning recoupment. However, . . . there has been a recent trend toward courts rejecting claims for recoupment." (internal citation omitted)); *Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707, 715 (8th Cir. 2009) ("[T]he most recent decisions reflect the [no recoupment] position." (quotations omitted)). The Restatement of the Law of Liability Insurance confirms this switch in trend:

> Over the past few decades, the pro-recoupment cases have been viewed as stating the majority position, while anti-recoupment cases have been labeled the minority.  But in recent years, several state courts, including several state high courts, have faced recoupment of defense costs as an issue of first impression and have rejected a right of recoupment for the insurer, unless that right is established expressly by contract.

Restatement of the Law of Liability Insurance § 21, cmt. a (Am. L. Inst. 2019).  Jurisdictions not allowing recoupment tend to focus on the deleterious effect that such a rule would have on the distinction between the duty to defend and the duty to indemnify.  *See, e.g.*, *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 544 (Pa. 2010) ("[P]ermitting reimbursement . . . would amount to a retroactive erosion of the broad duty to defend in Pennsylvania by making the right and duty to defend contingent upon a court's determination that a complaint alleged covered claims, and would therefore narrow Pennsylvania's long-standing view that the duty to defend is broader than the duty to indemnify.").  We are persuaded by the recent trend of state high courts holding that there is no right to reimbursement in similar cases.

The most important consideration in our predictive analysis, however, is the structure of Georgia's insurance law.  *See SA Palm Beach*, 32 F.4th at 1357 ("We therefore consider whatever might lend [us] insight, including relevant state precedents . . . and any

other reliable data . . . .").     The broad duty to defend is foundational. *See, e.g.*, *Landmark Am.*, 705 S.E.2d at 710. If we were to adopt a rule allowing for broadscale reimbursement without any contractual provision securing that right, the duty to defend would collapse into the duty to indemnify. That is, if the duty to defend required insurers to mount a defense but the defense was widely reimbursable upon a court's determination that no ongoing duty to defend exists, the duty to defend would simply become the duty to indemnify.     Simply put, wide-ranging reimbursement is necessarily inappropriate in a system—like Georgia's—that is predicated on a broad duty to defend and a more limited duty to indemnify. *See Shafe*, 653 S.E.2d at 873; *Penn-Am.*, 490 S.E.2d at 376–77. We find the logic of the "no recoupment" cases that illustrate this point persuasive, and we predict that the Supreme Court of Georgia would follow that logic to adopt a "no recoupment" rule to protect its insurance system.[20] *See, e.g.*, *Jerry's Sport Ctr.*, 2 A.3d at 544.

We think it clear based on Georgia's substantive law as well as its general insurance framework that the Supreme Court of Georgia would not allow an insurer to recoup its expenses based on a reservation of rights letter without any contractual provision allowing for reimbursement.     This position comports with the national trend that disfavors recoupment in similar circumstances.

---

[20] Because we find that there is no right to reimbursement under Georgia law in these situations, we need not address the insureds' additional argument that the insurers did not adequately reserve their rights in the first place.

While insurers can certainly contract for a right to reimbursement, they cannot do so in a subsequent reservation of rights after a reimbursement-less bargain has been struck.

## IV.    Conclusion

We affirm both of the district court's holdings.  First, we agree that the insurers did not have a duty to defend the insureds in the underlying action.  To supplement this analysis, we hold that the duty to defend was extinguished when the district court's ruling was issued.  Second, we agree that the insurers do not have a right to reimbursement because the reservation of rights letters did not create a new contract, the insurers' unjust enrichment argument is untenable, and we do not believe the Supreme Court of Georgia would upend the State's insurance law framework by establishing a right to reimbursement for an insurer who has no contractual right to recoupment.

**AFFIRMED.**