**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13915
Non-Argument Calendar

————————————

In re: SHIRLEY WHITE-LETT,

                                                                    *Debtor.*

————————————————————————

SHIRLEY WHITE-LETT,

                                                                    *Plaintiff-Appellant,*

*versus*

THE BANK OF NEW YORK MELLON,

                                                                    *Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:24-cv-02365-WMR

————————————

Before JILL PRYOR, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

Shirley White-Lett, a bankruptcy debtor proceeding *pro se*, brought several adversary proceedings related to a debt she owed to creditor Bank of New York Mellon ("BoNYM"). In the third adversary proceeding related to the debt, the bankruptcy court granted summary judgment to BoNYM, concluding that White-Lett's claims were barred by an earlier settlement agreement. She appealed to the district court, which affirmed. She now appeals the district court's order. Because we agree that the terms of the settlement agreement barred White-Lett's claims, we affirm.

## I.

In May 2005, White-Lett took out a loan, borrowing $636,000, with the loan secured by a security deed on her home. The loan and security deed were later assigned to BoNYM. Over time, BoNYM relied on different companies to service the loan, including Bank of America, Select Portfolio Services, Inc. ("SPS"), and Shellpoint Mortgage Servicing.

In 2010, White-Lett, proceeding *pro se*, filed a petition for Chapter 7 bankruptcy. When she filed the petition, Bank of America was the servicer for her loan. In her petition, she listed Bank of America as a creditor holding a secured claim and indicated that she intended to reaffirm the debt. But no agreement reaffirming the debt was filed in the bankruptcy proceedings. *See* 11 U.S.C. § 524(c)(3) (requiring a reaffirmation agreement to be filed with a bankruptcy court before the granting of a discharge). In 2011, the bankruptcy court granted White-Lett a discharge, and in 2012, it closed her bankruptcy case.

24-13915               Opinion of the Court                3

In November 2013, more than two years after White-Lett received a bankruptcy discharge, SPS took over as the servicer for the loan. SPS acted as servicer until December 2016, when Shellpoint took over as servicer. While acting as servicers, both SPS and Shellpoint repeatedly tried to collect the mortgage debt from White-Lett. According to White-Lett, their attempts to collect the debt violated the bankruptcy court's discharge injunction.

For more than a decade, White-Lett has been litigating claims against BoNYM, Bank of America, SPS, Shellpoint, and others related to the debt. In 2013, she filed a lawsuit in Georgia state court against BoNYM, Bank of America, and others. In the state court action, she asserted, among other things, that BoNYM had never been assigned the security deed. The state court dismissed the action, concluding that White-Lett's challenge to the security deed's validity was barred by the doctrine of res judicata because she had received a bankruptcy discharge. The Georgia Court of Appeals affirmed.

In 2017, White-Lett filed an action in federal district court against BoNYM, SPS, Shellpoint, and others. She asserted claims arising under the Fair Debt Collection Practices Act ("FDCPA"), the Real Estate Settlement Procedures Act ("RESPA"), the Truth in Lending Act, and state law. By July 2019, the only claims remaining in the action were the FDCPA and RESPA claims against Shellpoint.

In 2020, White-Lett sought to reopen her bankruptcy case. She asserted that her loan had been discharged in the bankruptcy

and that the mortgage servicers, while acting as agents of BoNYM, had violated the bankruptcy court's discharge injunction. The bankruptcy court reopened the bankruptcy case, reappointed a trustee, and set a deadline for the filing of proofs of claim. BoNYM filed a proof of claim in the amount of $886,240.81 for the loan.

After the bankruptcy proceedings were reopened, White-Lett filed multiple adversary proceedings related to the loan. In the section that follows, we review White-Lett's first two adversary proceedings. We also discuss that, in the reopened bankruptcy case, BoNYM sought a determination whether there was an automatic stay in place. We then review the settlement agreement White-Lett and BoNYM signed in 2022, in which they agreed to resolve some, but not all, of their disputes. We conclude this section by reviewing White-Lett's third adversary proceeding, which generated this appeal.[1]

## A.    The First Adversary Proceeding

In February 2020, White-Lett filed the first adversary proceeding, bringing claims against BoNYM's parent company (but not BoNYM itself), SPS, and Shellpoint. She alleged that from December 2013 through July 2017, SPS and Shellpoint violated the bankruptcy court's discharge injunction by attempting to collect

---

[1] While this appeal was pending, White-Lett filed in the bankruptcy court a fourth adversary proceeding against BoNYM and other defendants. The bankruptcy court dismissed the adversary proceeding. White-Lett's appeal of that decision is currently pending before the district court. No issues regarding the fourth adversary proceeding are before us in this appeal.

the mortgage debt. She asserted that BoNYM's parent company was liable under an agency theory for the servicers' violations. She sought a declaration from the bankruptcy court that she had not reaffirmed the mortgage debt in her bankruptcy proceedings. She also requested that the bankruptcy court hold BoNYM's parent company, SPS, and Shellpoint in contempt for violating the discharge injunction and impose sanctions of more than $1,000,000.

In the adversary proceeding, BoNYM's parent company asserted that it was not the correct party and proposed that BoNYM be substituted as a defendant. But White-Lett would not agree to the substitution and did not add BoNYM as a defendant despite having the opportunity to do so.

The bankruptcy court determined that some of SPS's communications violated the discharge injunction but that none of Shellpoint's communications had. Although SPS had violated the discharge injunction, the bankruptcy court ruled that it was liable for contempt sanctions only if White-Lett could show that SPS knew of the discharge injunction. Because there was a factual dispute about SPS's knowledge, the bankruptcy court concluded that a trial was necessary.

In December 2022, shortly before the trial in the bankruptcy court, White-Lett reached a settlement with BoNYM, which we describe in more detail below. As relevant to the first adversary

proceeding, White-Lett agreed to dismiss with prejudice her claims against BoNYM's parent company.[2]

## B.    The Second Adversary Proceeding

In December 2020, White-Lett filed a second adversary proceeding, this time bringing claims against BoNYM and several other entities. She objected to BoNYM's proof of claim and sought a declaration that it was not entitled to enforce the security deed. She also alleged that from January 2010 through May 2013, Bank of America tried to collect payments from her on the mortgage and wrongfully pursued foreclosure proceedings. She asserted that Bank of America violated the bankruptcy court's discharge injunction and that because it was acting as BoNYM's agent, BoNYM was liable for the violations.

BoNYM moved to dismiss, and the bankruptcy court granted the motion in part. It concluded that White-Lett lacked standing in her Chapter 7 case to object to BoNYM's proof of claim. It also determined that she was barred under the doctrines of claim preclusion and issue preclusion from challenging the validity of the assignment of the security deed to BoNYM because she had unsuccessfully litigated this issue in the 2013 Georgia state court action.

---

[2] After the settlement, the only claims that remained in the first adversary proceeding were White-Lett's claims against SPS. After a trial, the bankruptcy court found that SPS lacked actual or constructive knowledge of the discharge injunction and thus was not liable for contempt sanctions. White-Lett appealed to the district court, which affirmed. We affirmed the district court. *See White-Lett v. Shellpoint Mortg. Servicing*, No. 24-12493, 2025 WL 2977062 (11th Cir. Oct. 22, 2025) (unpublished).

24-13915                Opinion of the Court                7

But the bankruptcy court allowed her claim against BoNYM for violating the discharge injunction to proceed.

In April 2022, White-Lett appealed the bankruptcy court's order dismissing her objection to the proof of claim. Her appeal generated district court case number 1:22-cv-00082 in the Northern District of Georgia. In April 2024, the district court affirmed the bankruptcy court's decision.

While the appeal in 1:22-cv-00082 was pending in the district court, White-Lett continued to litigate in bankruptcy court her claim seeking sanctions against BoNYM for violations of the discharge injunction that allegedly occurred between January 2010 and May 2013. In May 2022, White-Lett sought permission from the bankruptcy court to file an amended complaint and add claims against BoNYM for violations of the discharge injunction that allegedly occurred after November 2013 when SPS became the servicer. The bankruptcy court denied the motion to amend.

In the December 2022 settlement agreement, White-Lett and BoNYM agreed to resolve some of the claims raised in the second adversary proceeding. White-Lett agreed to dismiss with prejudice her claims against BoNYM for violations of the discharge injunction that occurred before November 2013. But she did not release the claims at issue in the appeal in 1:22-cv-00082.

## C.    The Proceedings in White-Lett's Bankruptcy

In July 2022, BoNYM filed a motion in White-Lett's bankruptcy proceedings seeking a declaration that there was no longer an automatic stay in place that applied to her real property. It

asserted that any automatic stay ended when the bankruptcy court terminated White-Lett's case in 2012 and that under the Bankruptcy Code no new stay was imposed when the case was reopened in 2020. The bankruptcy court granted the motion and declared that the automatic stay had terminated in 2012 when the case was terminated.

White-Lett filed a notice of appeal. This appeal generated district court case 1:22-cv-03992 in the Northern District of Georgia. On appeal, White-Lett argued that the bankruptcy court lacked jurisdiction to grant relief from the automatic stay.

In November 2022, while the appeal was pending, White-Lett filed an emergency motion in the district court seeking a stay. In that motion, she asserted that if she prevailed in the adversary proceedings, she could collect damages for violations of the discharge injunction. She asserted that if these damages exceeded the value of BoNYM's claim in her bankruptcy, she would seek to extinguish its security deed. She asserted that a stay was necessary to keep BoNYM from foreclosing on her home. After a hearing, the district court denied the motion, concluding that (1) a stay was unnecessary because a state court had already entered an injunction related to the property and (2) White-Lett was unlikely to prevail on her claims.

In August 2024, the district court entered an order affirming the bankruptcy court.

**D.    The December 2022 Settlement Agreement**

As we have described in the preceding sections, in December 2022, BoNYM and White-Lett entered into a settlement agreement that resolved some, but not all, of their disputes. The agreement recited that White-Lett had litigated claims related to the loan in a number of cases, including in her main bankruptcy case, the first adversary proceeding, the second adversary proceeding, the appeal arising out of the second adversary proceeding pending before the district court in 1:22-cv-00082, and the appeal arising out of the bankruptcy court's order that there was no longer an automatic stay in effect that was pending before the district court in 1:22-cv-03992. The agreement stated that BoNYM and White-Lett desired to resolve some of the claims.

The settlement agreement provided that "[i]n consideration of the mutual covenants and other good and valuable consideration," BoNYM would pay White-Lett $18,000 and White-Lett would release "all past and present claims" against BoNYM's parent company, dismiss with prejudice all claims asserted against BoNYM's parent company in the first adversary proceeding, and release certain claims against BoNYM. Doc. 5-5 at 22–24.[3] White-Lett also agreed to release BoNYM from "all past and present claims" that "relate[d] to violations of bankruptcy law occurring before January 1, 2017." *Id.* at 24. The agreement specified that the term "[a]ll past and present claims" referred to "all claims,

---

[3] "Doc." numbers refer to the district court's docket entries.

counterclaims, actions, defenses, affirmative defenses, rights, causes of action, suits, [and] set-offs . . . whether known or unknown or capable of being known . . . that arose from any alleged violations of bankruptcy law prior to January 1, 2017." *Id.* at 24–25.

But the settlement agreement carved out certain claims that were not released. As relevant for our purposes, White-Lett did not release BoNYM from "[a]ny claim" that she had asserted against it in the 2017 district court action in which she raised FDCPA, RESPA, and other claims, as well as in another pending state court action. *Id.* at 25. In addition, she did not release BoNYM from any "rights, claims, or defenses at issue in" her appeal to the district court in 1:22-cv-00082—seeking review of the bankruptcy court order in the second adversary proceeding dismissing her objections to BoNYM's proof of claim—or her appeal in 1:22-cv-03992—seeking review of the bankruptcy court order declaring that there was no automatic stay in place. *Id.*

The settlement agreement stated that BoNYM's $18,000 payment was "in full satisfaction" of the claims against BoNYM's parent and BoNYM that were released under the settlement agreement. *Id.* at 23. White-Lett "expressly waived any right to assert hereafter that, because of ignorance, oversight, or error, her releases are not valid with respect to any particular claim." *Id.* at 25. The parties further agreed that the consideration received in connection with the settlement was "fair, adequate, and substantial." *Id.* at 27. The agreement also stated that it would be "interpreted,

enforced, and controlled under the laws of the state of Georgia." *Id*. at 29.

## E.    The Third Adversary Proceeding

Less than a year after the parties signed the settlement agreement, White-Lett filed a third adversary proceeding, this time against BoNYM alone. She alleged that BoNYM was liable for SPS's violations of the discharge injunction that occurred between November 2013 and December 2016. She relied on the bankruptcy court's decision in the first adversary proceeding finding that SPS violated the bankruptcy court's discharge injunction. And she alleged that BoNYM was liable for these violations because SPS was acting pursuant to its instructions. She asked the bankruptcy court to hold BoNYM in contempt and award her damages.

BoNYM moved for summary judgment, arguing that White-Lett's claims were barred by the settlement agreement. The bankruptcy court granted the motion. It determined that the terms of the settlement agreement were "clear and unambiguous" and expressly released BoNYM from claims alleging violations of bankruptcy law that occurred before January 1, 2017. Doc. 1-2 at 21. Because White-Lett's claims in the third adversary proceeding arose from "violations of the discharge injunction that took place

between 2013 and 2016," the bankruptcy court concluded that the claims were barred.[4] *Id.* at 22.

White-Lett nevertheless asserted that she could bring the claims in the third adversary proceeding under the settlement agreement's carve-out provision. She asserted that she had raised the issue of whether BoNYM was liable for SPS's violations of the discharge injunction between 2013 and 2016 in her appeal to the district court in 1:22-cv-03992. In particular, she pointed to her motion for a stay in which she argued that if she recovered damages in the first and second adversary proceedings, she would be entitled to a setoff.

The bankruptcy court rejected this argument. It explained that White-Lett had asserted in the third adversary proceeding that BoNYM "should be sanctioned for an alleged violation of the discharge injunction through SPS's communication with White-Lett during the period between 2013 and 2016." *Id.* at 24–25. It determined that there was "no connection" between this issue and the ones that White-Lett had raised in her appeal to the district court in 1:22-cv-03992, which was about "whether the automatic stay has terminated as to White-Lett's residence." *Id.* at 25. The bankruptcy court then looked at White-Lett's stay motion filed in that action. It concluded that "although White-Lett referred to both First and

---

[4] The bankruptcy court also determined that BoNYM was entitled to summary judgment because White-Lett's claims were "barred by the rules of preclusion." Doc. 1-2 at 21. Because we conclude that the settlement agreement barred White-Lett's claims, we do not address preclusion.

Second [adversary proceedings] in discussing potential setoff," she did not raise in the motion whether BoNYM was liable for SPS's alleged violations of the discharge injunction that occurred between 2013 and 2016. *Id.* at 24.

White-Lett appealed to the district court. In a careful and thorough order, the district court affirmed. The court reviewed in detail the parties' litigation history. It ultimately agreed with the bankruptcy court that the settlement agreement barred White-Lett's claims in the third adversary proceeding.

Like the bankruptcy court, the district court rejected White-Lett's argument that her claims in the third adversary proceeding were not released because they fell within the carve-out provision, as she had raised the same issues in her appeal to the district court in 1:22-cv-03992. The district court agreed that the settlement agreement did not release BoNYM from White-Lett's claims that were "at issue" or "under dispute" in the appeal in 1:22-cv-03992. Doc. 11 at 25. But the district court concluded that White-Lett had not raised in 1:22-cv-03992 the issue of whether BoNYM was liable for SPS's violations of the discharge injunction that occurred between 2013 and 2016.

The district court considered White-Lett's argument that she placed this issue in dispute in 1:22-cv-03992 when she filed the stay motion and requested a setoff based on damages that she could collect in the first and second adversary proceedings. The court disagreed, explaining that she had not sought damages in either the first or second adversary proceeding from BoNYM for SPS's

violations of the discharge injunction that occurred between 2013 and 2016.

White-Lett now appeals the district court's order.

## II.

"In an appeal of a district court's order affirming a bankruptcy court's grant of summary judgment, we review the bankruptcy court's judgment de novo, applying the well-known summary judgment standards." *Sunz Ins. Co. v. United States*, 125 F.4th 1035, 1040 (11th Cir. 2025) (citation modified). "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." *Id.* (citation modified).

## III.

The primary issue before us in this appeal is whether the bankruptcy court erred in granting summary judgment to BoNYM in the third adversary proceeding because the settlement agreement barred White-Lett's claims. Because we agree that the settlement agreement barred the claims, we conclude that the bankruptcy court properly granted summary judgment to BoNYM.

It is well established that a settlement agreement may include a release that bars a party to the settlement from raising certain claims. *See In re Managed Care*, 756 F.3d 1222, 1235 (11th Cir. 2014). "[A] settlement agreement is essentially a contract and is subject to the traditional rules of contract interpretation." *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1290 (11th Cir. 2004);

*see Dodds v. Dabbs, Hickman, Hill & Cannon, LLP*, 750 S.E.2d 410, 416 (Ga. Ct. App. 2013) (explaining that under Georgia law, "a release or settlement agreement is a contract subject to construction by the court" and "governed by state law applicable to contracts in general" (citation modified)).[5] "Under Georgia law, an unambiguous contract must be enforced as written." *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 941 (11th Cir. 2023) (citation modified); *see Atlanta Multispecialty Surgical Assocs., LLC v. DeKalb Med. Ctr., Inc.*, 615 S.E.2d 166, 167 (Ga. Ct. App. 2005) (stating that when "the terms of a contract are unambiguous, the court must enforce it literally, even if one party contends that he understood the contract to mean something else").

Here, the parties' settlement agreement included a release. To determine the scope of the release, we look to the text of their agreement. In the settlement agreement, White-Lett agreed to release BoNYM from "all past and present claims" that "relate[d] to violations of bankruptcy law occurring before January 1, 2017." Doc. 5-5 at 24. The settlement agreement then included a carve-out provision that excluded certain claims from the release. Under the carve-out provision, White-Lett could continue to pursue "[a]ny rights, claims, or defenses at issue in" her appeal to the district court in 1:22-cv-03992. *Id.* at 25. To determine whether a

---

[5] In interpreting the settlement agreement, we look to Georgia law because the agreement included a choice of law provision, stating that it "shall be interpreted" under Georgia law. Doc. 5-5 at 29. Both White-Lett and BoNYM agree that Georgia law governs this dispute.

particular issue is covered by this portion of the carve-out provision, we must identify the rights, claims, or defenses that were "at issue" in 1:22-cv-03992. According to White-Lett, a question was "at issue" in this proceeding if it was "disputed by the parties" in the proceeding. Appellant's Br. 21. We assume for purposes of this appeal that White-Lett's interpretation of "at issue" is correct.

We conclude that the release barred White-Lett's claims in the third adversary proceeding. As we have explained above, in the third adversary proceeding White-Lett sought to hold BoNYM liable under an agency theory for SPS's violations of the bankruptcy court's discharge injunction that occurred between November 2013 and 2016. Because these claims related to violations of bankruptcy law that occurred before January 1, 2017, the settlement agreement barred the claims, unless they are covered by the carve-out provision.

White-Lett says that her claims come within the carve-out provision because they were "at issue" in her appeal to the district court in 1:22-cv-03992. We disagree. In 1:22-cv-03992, she appealed to the district court the bankruptcy court's order determining that the automatic stay in her bankruptcy case was no longer in effect and argued that the bankruptcy court lacked jurisdiction to enter that order. We readily conclude that the merits of that appeal did not include a dispute about whether BoNYM was liable for SPS's violations of the discharge injunction that occurred between 2013 and 2016.

White-Lett resists this relatively straightforward analysis. She says that she put into dispute in 1:22-cv-03992 the issue of whether BoNYM was liable for SPS's violations of the discharge injunction that occurred between 2013 and 2016 when she filed the motion to stay. But after carefully reviewing the substance of her motion to stay, we disagree. In the motion to stay, White-Lett pointed to the claims she raised in the first and second adversary proceedings and posited that if her recovery in those proceedings exceeded the amount of BoNYM's proof of claim, she would be entitled to a set off, could satisfy BoNYM's claim, and could extinguish its security interest. The motion to stay, perhaps, put into issue the claims she raised in the first and second adversary proceedings. But in the first and second adversary proceedings she did not raise a claim against BoNYM for SPS's violations of the discharge injunction that occurred from 2013 through 2016.

True, in the first adversary proceeding, White-Lett brought claims against BoNYM's parent company, seeking damages against it for SPS's violations of the discharge injunction. But in that proceeding, the parent company pointed out that it was not White-Lett's creditor and offered to allow her to substitute BoNYM as a defendant. White-Lett steadfastly refused to consent to this substitution, insisting that the parent company was the correct defendant, and did not add BoNYM as a defendant. Given these events, we cannot say that White-Lett asserted in the first adversary proceeding a claim against BoNYM for SPS's violations of the discharge injunction that occurred between 2013 and 2016. We thus

reject her argument that her claims in the third adversary proceeding fall within the carve-out provision.

White-Lett raises another ground for why the settlement agreement did not bar her claims in the third adversary proceeding. She says that the release in the settlement agreement is not enforceable because she received no consideration in exchange for it. But she raises the issue of whether the release in the settlement agreement is unenforceable due to a lack of consideration for the first time in this appeal; she did not raise it before the bankruptcy court or in her appeal to the district court. Although a party may raise new *arguments* on appeal in support of a position advanced below, she generally forfeits an *issue* that she raises for the first time on appeal. *See Gould v. Interface, Inc.*, 153 F.4th 1346, 1354–55 (11th Cir. 2025). Because White-Lett's challenge based on a lack of consideration raises a new issue that was not raised below, we conclude that she forfeited it.[6] *See id.*

We agree with the bankruptcy court and the district court that the settlement agreement barred White-Lett's claims against BoNYM in the third adversary proceeding. Accordingly, we affirm the district court's order affirming the bankruptcy court's decision granting summary judgment to BoNYM.

**AFFIRMED.**

---

[6] In "extraordinary circumstances," we may consider a forfeited issue. *Gould*, 153 F.4th at 1358. But no extraordinary circumstances are present here.